970 A.2d 332

**Chad Everette MILLER**

v.

**STATE of Maryland.**

**No. 645, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 4, 2009.

Marc A. DeSimone, Jr. (Nancy S. Forster, Public Defender, on the brief), Baltimore, for Appellant.

Michelle W. Cole (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, WRIGHT, J.
FREDERICK SHARER (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

On May 14, 2007, in the Circuit Court for Baltimore County, Chad Everette Miller, the appellant, entered a guilty plea to one count of burglary in the first degree. As part of a plea agreement, the prosecutor recommended a sentence of 15 years' incarceration, suspend all but five years, to be followed by a period of probation. The court was not bound by the recommendation, however. After hearing from the appellant and the victim, and after considering the appellant's record,

the court sentenced him to 15 years' incarceration, with no period suspended.

The appellant filed a timely notice of appeal, which this Court treated as an application for leave to appeal under Md.Code (1974, 2006 Repl.Vol.), section 12–302(e) of the Courts and Judicial Proceedings Article ("CJ"). The appellant supplemented his application with a written challenge to the voluntariness of his guilty plea.

On September 25, 2008, we granted the appellant's application and ordered the parties to brief the following question:

Did the guilty plea *voir dire* establish that the [appellant] had the requisite understanding of the nature and elements of the crime of first-degree burglary?

For the following reasons, we answer this question in the negative and therefore shall vacate the judgment of the circuit court and remand the case for further proceedings.

## FACTS AND PROCEEDINGS

On January 4, 2007, the appellant was charged in a criminal information with first-degree burglary of the dwelling of Gilda Jeraldine Henry, his 89–year–old grandmother, and with related offenses.[1] Ms. Henry lived in a seniors apartment building, and had a car there. The appellant had a key to Ms. Henry's apartment, but Ms. Henry had made it clear that he was not allowed in.

The appellant was arraigned on January 4, 2007. He was presented with an Initial Appearance Report. He signed a receipt for the report acknowledging that he had been told of "the offense(s) for which I am charged."

---

1. The charging document included nine counts: Count 1 (first-degree burglary); Count 2 (third-degree burglary); Count 3 (theft under $500); Count 4 (unauthorized use); Count 5 (theft over $500); Count 6 (giving a false statement to a police officer); Count 7 (first-degree burglary of a different victim); Count 8 (theft over $500 of victim in Count 7); and Count 9 (third-degree burglary of victim in Count 7).

On May 14, 2007, the appellant appeared in court with counsel to plead guilty to Count 1 of the charging document (burglary in the first degree). The prosecutor informed the court that the sentencing guidelines for the offense were one to five years, and that the State would recommend incarceration for 15 years, with all but five years suspended, to be followed by a period of probation, with the addition that the appellant was free to request a different disposition. Defense counsel acknowledged that was his understanding of the agreement with the State.

The court then directed defense counsel to advise the appellant of his rights. The following colloquy took place:

[DEFENSE COUNSEL]: Mr. Miller, we went through negotiations today, you understand?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: You understand the plea offer, right?

THE DEFENDANT: That's correct.

[DEFENSE COUNSEL]: The State is offering 15 years suspend all but five. As we talked about earlier this morning, you don't have to plead guilty, you could enter into not guilty, and what would happen then you would have a right to a jury trial. A jury would be picked from the voter rolls of Baltimore County or the Department of Motor Vehicle rolls.

That jury would be impaneled, and they will listen to the facts and evidence of the case, and that jury would have to make a determination that the Assistant States's Attorney . . . has met . . . his burden of proving you guilty beyond a reasonable doubt; do you understand that?

THE DEFENDANT: Yes, sir.

Defense counsel further advised the appellant that, if the case went to trial, the jury would have to reach a unanimous verdict; the State would call his grandmother to testify and he (the appellant) would have the right to cross-examine her; he could call witnesses on his own behalf and could ask the court for assistance in securing their testimony at trial; he could

advance motions asserting legal defenses; he would be presumed innocent and the State would have to prove his guilt beyond a reasonable doubt; and he could choose to exercise his Fifth Amendment right to remain silent and, if he did, the judge would instruct the jurors that that could not be held against him. The appellant acknowledged that he understood these rights and that he would be forfeiting them by pleading guilty.

With regard to the guilty plea itself, defense counsel advised the appellant that, if he were on parole or probation, the entry of the guilty plea could be considered a violation; if he were not a citizen of the United States, he could be deported as a result of the guilty plea; he only could seek review of his guilty plea on limited grounds; and because the crime was committed in Baltimore County, the Circuit Court for Baltimore County had jurisdiction. The appellant acknowledged that he understood. He stated that he was 31 years old, had completed three years of college, could read and write, and was not under the influence of drugs or alcohol.

Defense counsel then advised the appellant about whether he could challenge the legality of the sentence imposed and whether he was pleading guilty of his own volition:

[DEFENSE COUNSEL]: . . . The next would be whether the sentence imposed by the Court is illegal, and I believe first degree burglary carries a maximum sentence of 20 years; do you understand?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: So if [the judge] gave you 20 years that would not be an illegal sentence.

Next would be whether or not you didn't enter into this plea freely and voluntarily. Anybody promise you anything to get you to enter into this plea—

THE DEFENDANT: No.

[DEFENSE COUNSEL]:—negotiations this morning? Ms. Henry is your grandmother, right?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: For the record, Ms. Henry suggested that you enter into the plea. She wants to see you when you come home. She is 89 years old, right?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: Wasn't a promise, she didn't get you to promise anything to plead this way?

THE DEFENDANT: Correct.

[DEFENSE COUNSEL]: Neither did I?

THE DEFENDANT: No.

[DEFENSE COUNSEL]: Correct?

THE DEFENDANT: Correct.

[DEFENSE COUNSEL]: What you are doing is your sole decision, despite what your grandmother said, you still have an opportunity to go to trial.

THE DEFENDANT: Yes.

The appellant said he was satisfied with the services of his lawyer, there was nothing else he wanted his lawyer to do that was not done, and he did not have any questions for his lawyer. He told the court that no one had made any threats or promises to induce him to plead guilty. The plea colloquy ended as follows:

THE COURT: The choice was made [to] give up your right to a jury trial, right to a trial before me, your Constitutional rights, part and parcel of any trial that takes place in a criminal action in the United States of America, are they choices you have made freely, knowingly, voluntarily and intelligently?

THE DEFENDANT: Yes, they are.

THE COURT: All your questions have been answered and you know what you are doing here today?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have a clear mind?

THE DEFENDANT: Yes, sir.

THE COURT: I find the defendant is qualified. I will hear the statement of facts.

The prosecutor proceeded to read the statement of facts in support of the guilty plea: On January 4, 2007, at approximately 9:00 a.m., police officers were dispatched to Ms. Henry's apartment in the seniors apartment building. She reported that, when she woke up that morning, her purse and her car keys were missing.

Ultimately, investigation revealed, all caught on video, the defendant was seen during the night walking through the hallways of Ms. Henry's residence [*i.e.*, the seniors apartment building]. Walks into her apartment, comes out about four minutes later, rifling through the purse he has now stolen in the burglary.

Ultimately, later that day, the police catch the defendant asleep in the victim's car in Baltimore City. When they do a search of the car, Ms. Henry's purse was also located in the car.

Ms. Henry certainly didn't give the defendant permission to come in the residence on that date and steal her purse, which included her keys and take her car as well. All events did occur in Baltimore County, Your Honor.

The judge concluded that the evidence was legally sufficient and found the appellant guilty of burglary in the first degree. After the State *nolle prossed* the balance of the charges, the court was told of the appellant's prior record, which included five adult convictions. The court also was informed that, less than a week after the appellant had been released on his own recognizance in this case, he had again stolen his grandmother's car and also had withdrawn money from her bank account. His bail status then was revoked. The court sentenced the appellant to 15 years' incarceration, with no time suspended.

The appellant filed his notice of appeal on May 17, 2007, three days after the guilty plea was entered. As noted, this Court treated the notice of appeal as an application for leave to appeal.

## DISCUSSION

### (a)

 For a guilty plea to meet constitutional muster, the record must affirmatively show that it was entered into by the accused (1) voluntarily; (2) with an intelligent understanding of the nature of the offense and of the possible consequences of the plea; and (3) unconditionally. *Hudson v. State,* 286 Md. 569, 595, 409 A.2d 692 (1979). *See also Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Yoswick v. State,* 347 Md. 228, 239, 700 A.2d 251 (1997). A guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

 On review of a constitutional challenge to a guilty plea, we engage in an independent review of the entire record. *Harris v. State,* 303 Md. 685, 697–98, 496 A.2d 1074 (1985); *accord Abrams v. State,* 176 Md.App. 600, 617–18, 933 A.2d 887 (2007). We will accept the findings of fact of the trial court, unless they are clearly erroneous. *Harris,* 303 Md. at 698, 496 A.2d 1074. "Generally, we review the validity of the guilty plea as a whole under the 'totality of the circumstances' test." *Metheny v. State,* 359 Md. 576, 604 n. 18, 755 A.2d 1088 (2000).

Rule 4–242(a) allows a defendant to plead not guilty, guilty, not criminally responsible by reason of insanity, or, with the consent of the court, *nolo contendere.* Subsection (c) of the rule states in relevant part what the court must do before accepting a guilty plea.

(c) *Plea of guilty.* The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge

and the consequences of the plea; and (2) there is a factual basis for the plea.... [2]

■ A trial court "does not have to 'specifically enumerate certain rights, or go through any particular litany, before accepting a defendant's guilty plea.'" *State v. Gutierrez,* 153 Md.App. 462, 476, 837 A.2d 238 (2003) (quoting *Davis v. State,* 278 Md. 103, 114, 361 A.2d 113 (1976)); *see also Miller v. State,* 32 Md.App. 482, 485, 361 A.2d 152 (1976) (it is not necessary for the court to engage in a "ritualistic litany" of specific rights that a defendant waives by pleading guilty).

### (b)

The appellant contends his plea to first-degree burglary must be set aside because the record fails to establish that he entered into it knowing the nature and elements of the crime.

In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court affirmed the grant of a writ of *habeas corpus* in favor of a state-court defendant who pleaded guilty to second-degree murder. The writ was granted on the ground that the defendant had not entered into the plea with knowledge that intent to kill was an element of the crime. The federal district court held an evidentiary hearing and found as a fact that the defendant, who was mentally retarded, never had been advised, either by the trial judge or by counsel, that intent to kill was an element of second-degree murder.

In upholding the grant of the writ, the Supreme Court observed that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.* at 647, 96 S.Ct. 2253. The

---

**2.** Henceforth in this opinion, we shall refer to the 2007 version of the Rule in effect at the time of the plea colloquy in this case. The Rule was amended effective January 1, 2008. It now requires the court to determine and "announce[ ] on the record" that the defendant is pleading guilty voluntarily, with understanding of the nature of the charge.

Court concluded, however, that the "unique" facts in the case—that the intent to kill element was *not* explained to the defendant, at any time, that he was mentally retarded, and that the indictment did not charge second-degree murder—effectively rebutted that presumption.

Five years later, in *State v. Priet*, 289 Md. 267, 281–82, 424 A.2d 349 (1981), the Court of Appeals quoted the Supreme Court's "presumption" language in *Henderson* in reversing decisions of this Court and holding that in three consolidated cases the defendants each had entered into their guilty pleas with knowledge of the nature and elements of their crimes. In one case, during the plea hearing, the defendant said he knew the difference between first-degree murder and second-degree murder, to which he was pleading guilty, and had taken that knowledge into account in deciding to enter into the plea. In a second case, the defendant stated, in response to a query by his lawyer during the plea hearing, that he and his lawyer had discussed "the elements of robbery," the crime to which he was entering an *Alford* plea. 289 Md. at 274, 424 A.2d 349. In the third case, the defendant pleaded guilty to armed robbery of a convenience store with a 14–inch bayonet. During the plea colloquy, the defendant told the court that he had discussed the guilty plea with his attorney, "as well as the relevant facts of the case and possible defenses to the crime." *Id.* at 270, 424 A.2d 349.

In upholding the guilty pleas, the Court explained that, under *Henderson,* the validity of a guilty plea depends upon whether, considering the totality of the circumstances, including the "record as a whole," the trial judge "could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty." *Id.* at 291, 424 A.2d 349. The Court made plain that the trial court did not need to recite a precise litany or list of the elements of a crime for the defendant to understand the nature of the crime. It was sufficient if, from a practical standpoint, the trial court could find that the defendant understood the nature of the crime. In addition, the Court pointed out that "[t]he nature of some crimes is readily understandable from the crime itself." *Id.* at

288, 424 A.2d 349. Indeed, in upholding the guilty plea in the armed robbery case, the Court noted that the crime was "simple." *Id.* at 291, 424 A.2d 349.[3]

In *Marshall v. Lonberger*, 459 U.S. 422, 437, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), the Supreme Court observed that, "[u]nder *Henderson*, [the *habeas corpus* petitioner] must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted." In that case, the defendant was convicted in an Ohio state court of aggravated murder upon a "specification" that he previously was convicted of an offense "the gist" of which was "the purposeful killing of or attempt to kill another." 459 U.S. at 425–26, 103 S.Ct. 843 (quoting Ohio Rev.Code Ann. § 2929.04(A)(5) (1975)) (footnote omitted). The prior conviction was a 1972 guilty plea in an Illinois state court to attempted murder and aggravated battery of a victim. In the Ohio case, the court held an evidentiary hearing on whether, in the Illinois case, the defendant had pleaded guilty knowingly. The Ohio court ruled as a matter of fact that he had. The defendant was convicted. Later, on *habeas corpus* review, a federal appeals court ruled that the Illinois conviction had not been knowingly entered into. *Lonberger v. Jago,* 651 F.2d 447 (6th Cir.1981). The Supreme Court reversed, including the *Henderson* presumption among the factors supporting the Ohio trial court's factual finding on knowledge and chiding the appeals court for not accepting that finding.

Two years before the guilty plea in the case at bar, the Supreme Court again ruled in a *habeas corpus* case that the defendant's guilty plea had been entered with knowledge of the nature and elements of the crime. In *Bradshaw v.*

---

**3.** *Cf. Thanos v. State,* 330 Md. 77, 91, 622 A.2d 727 (1993) (criminal defendants represented by counsel are presumed to have been informed of their constitutional rights, including the right to testify); *Tilghman v. State,* 117 Md.App. 542, 554–55, 701 A.2d 847 (1997) ("Maryland law recognizes a presumption, premised on the permitted inference that attorneys, as officers of the court, 'do as the law and their duty require them,' that a represented defendant has been told of his constitutional rights, by his attorney.") (quoting *Stevens v. State,* 232 Md. 33, 39, 192 A.2d 73 (1963)).

*Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), in an Ohio state court, Stumpf had pleaded guilty to aggravated murder and was sentenced to death. He and another man, Wesley, were involved in the shooting murder, but only one was the actual shooter. The prosecution's theory against Stumpf was that he was the actual shooter. After Stumpf pleaded guilty, Wesley was tried on the prosecution theory that he (not Stumpf) was the actual shooter. Wesley was convicted but was not sentenced to death. Stumpf then moved to withdraw his guilty plea or vacate his death sentence. The trial court denied the motion and the Ohio state appellate courts affirmed.

Stumpf filed a *habeas corpus* petition in the federal district court, which denied the writ but granted permission to appeal. A split panel of the Court of Appeals for the Sixth Circuit reversed, concluding (as relevant here) that Stumpf had not understood when he entered the guilty plea that specific intent to cause death is a necessary element of the crime of aggravated murder. *Stumpf v. Mitchell,* 367 F.3d 594, 596 (6th Cir.2004) (Stumpf's guilty plea "unknowing and involuntary because he was manifestly not aware that specific intent was an element of the crime to which he pleaded guilty").

The Supreme Court reversed, upholding the plea. Noting that it had "never held that the judge must himself explain the elements of each charge to the defendant on the record," the Court observed that, at the plea hearing, Stumpf's "attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge," and "Stumpf himself then confirmed that this representation was true." 545 U.S. at 183, 125 S.Ct. 2398. Citing *Henderson,* the Court remarked that the constitutional requirements for a guilty plea can be met "where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Id.* The Court said nothing about the presumption language it had used in *Henderson* (or in *Lonberger*). That is not surprising, however, because the facts in *Bradshaw* sup-

ported a "knowledge of nature and elements of the crime" finding without applying any such presumption.

Two years later, in *dicta* in *Abrams v. State, supra,* 176 Md.App. 600, 933 A.2d 887, we read *Bradshaw* to have scaled back the presumption suggested in *Henderson* so that now, when a guilty plea is entered, it cannot be presumed from the mere fact of representation that defense counsel has explained the nature and elements of the charges to the defendant.[4] Abrams was challenging his *Alford* plea to three counts of uttering. He argued that the record of the plea colloquy did not show that he was told, at that time, of the specific intent element of that crime. We rejected his argument because, in point of fact, the record of the plea colloquy showed that the nature of the charge of uttering, including the specific intent element, had been explained to Abrams by the trial judge. *Id.* at 623–24, 933 A.2d 887.[5] We also noted that Abrams had confirmed that he had reviewed the statement of charges and any possible defenses with his attorney. *Id.* at 624, 933 A.2d 887.

We went on to remark, however, that, under *Bradshaw:*

No longer can a trial judge rely on the [*Henderson* ] presumption that defense counsel has sufficiently explained to the defendant the nature of the offense to which he or she is entering a guilty plea. Instead, the trial judge must either (1) explain to the defendant on the record the nature of the charge and the elements of the crime, or (2) obtain on the record a representation by defense counsel that the defendant has been "properly informed of the nature and elements of the charge to which he [or she] is pleading guilty."

---

**4.** Our opinion in *Abrams* was filed on September 10, 2007, four months after the guilty plea in the case at bar.

**5.** "[Your counsel] tells me you want to plead guilty to three counts of uttering, which accuses you of offering a forged instrument to obtain some benefit you are not entitled to which carries a possible maximum of 10 years." (Emphasis omitted.)

*Abrams*, 176 Md.App. at 622–23, 933 A.2d 887 (quoting *Brad-shaw, supra*, 545 U.S. at 183, 125 S.Ct. 2398 (footnote omitted)).

Recently, in *Rivera v. State*, 180 Md.App. 693, 952 A.2d 396, *cert. granted*, 406 Md. 112, 956 A.2d 201 (2008), we upheld a guilty plea against a challenge by *coram nobis* petition that the defendant had not entered into the plea with knowledge of the nature and elements of the offense. He had been charged with contributing to rendering a child in need of assistance, in violation of CJ section 3–828, by virtue of acts committed in 1997. At the plea hearing, the trial judge questioned Rivera as follows:

Q. Have you had a chance to discuss the *charges* in this case, as well as the terms of this plea, with your attorney?

A. Yes.

Q. Do you have any questions you want to ask either your attorney or the Court, before we go any further?

A. No.

*Rivera*, 180 Md.App. at 712–13, 952 A.2d 396 (emphasis in *Rivera*). We held that the record as a whole showed that Rivera entered into the plea with knowledge of the nature of the charge to which he pleaded guilty, in satisfaction of the pre-*Bradshaw* test established in *Priet*.[6]

---

**6.** The defendant also argued, based on *Bradshaw* and *Abrams*, that his 1997 guilty plea could not be upheld because the trial court had failed to advise him of all the elements of the crime. He did not address the retroactive application of *Bradshaw* to a guilty plea entered before *Bradshaw* was decided. Moreover, he had not made a *Bradshaw* argument below and did not adequately brief it on appeal. Accordingly, we declined to address that contention.

The questions presented in *Rivera* on *certiorari* in the Court of Appeals are: "1. Did the circuit court err in accepting a guilty plea without a factual basis to support it and did the Court of Special Appeals err in ruling that a factual statement in support of a guilty plea need not conform to the elements of the offense to which defendant pleads guilty?" and "2. Did the Court of Special Appeals err in ruling that Petitioner's guilty plea was voluntary notwithstanding that he was assured by his attorney, the prosecutor, and an Immigration and Customs Enforcement attorney that he would not be deported if he pleaded guilty when, in fact, no such assurances were possible and the

■ The case at bar is unlike *Bradshaw v. Stumpf, Abrams v. State,* or *Rivera v. State.* In those cases, at the plea hearings, there either was a representation by the defendant's lawyer that he had previously informed the defendant of the elements of the charge (*Bradshaw*), a representation by the defendant that he had discussed the "charges" with his lawyer (*Rivera*), or an explanation by the judge of the nature and elements of the crime (*Abrams*). Here, in the plea hearing, the judge did not explain the nature and elements of first-degree burglary, defense counsel did not represent that he had explained the nature and elements of the crime to the appellant, and the appellant did not represent that he understood the charge. Neither defense counsel nor the prosecutor explained the nature and elements of first-degree burglary. The only mentions of first-degree burglary during the plea hearing were (1) the prosecutor's statement, "[t]he plea, my understanding of the plea is as follows. Count 1 of the indictment is burglary in the first degree. The guidelines are one to five years incarceration"; and (2) the appellant's statement that he understood the maximum penalty for burglary in the first degree is 20 years' incarceration.[7]

The State maintains that the appellant adequately was informed of the nature of first-degree burglary in three ways: by the prosecutor's reading of the agreed statement of facts at the plea hearing; by the appellant's statements at the plea hearing that he "unders[tood] the plea offer" and that he had discussed the guilty plea with his lawyer and all his questions had been answered; and by the appellant's having been informed of the charges against him at his arraignment, as evidenced by the receipt he signed.

Section 6–202(a) of the Criminal Law Article ("CL"), Md. Code (2002), prohibits burglary in the first degree. It states

---

plea led to Petitioner's deportation proceedings?" *See Rivera v. State,* 180 Md.App. 693, 952 A.2d 396.

7. This case also is unlike *Henderson,* where there was an affirmative finding that the defendant had *not* been told the nature and elements of the crime.

that "[a] person may not break and enter the dwelling of another with the intent to commit theft or a crime of violence." In this case, the statement of facts in support of the guilty plea said nothing to explain the nature and elements of that crime. For example, one would not know from the statement of facts that, to be guilty, the appellant had to have been acting with an intent to commit theft or an intent to commit a crime of violence when he entered his grandmother's apartment. Although the statement of facts is legally sufficient to support a reasonable inference that the appellant indeed acted with the intent to commit theft, it does not communicate that that intent (or the intent to commit a crime of violence) is an element or part of the nature of the crime. (Moreover, the statement of facts was read into the record *after* the court already had determined that the appellant was "qualified" to plead guilty.) Accordingly, we find no merit in the State's argument that the statement of facts put on the record at the plea hearing gave the appellant knowledge of the nature and elements of first-degree burglary.

The State's second argument lacks factual support in the record. Contrary to the State's assertion, the appellant did not say at the plea hearing that he and his lawyer had discussed the guilty plea and all his questions had been answered. At the end of the colloquy, when being questioned by the judge, he said his questions had been answered by counsel; that is all.[8]

---

8. The State's reliance upon *State v. Gutierrez, supra* (decided before *Bradshaw* and *Abrams* ) is misplaced for the same reason. There, we considered whether a guilty plea could be knowingly, intelligently, and voluntarily entered into without the defendant's having been explicitly informed of, *inter alia,* the privilege against self-incrimination. A post conviction court had found that Gutierrez had involuntarily entered his guilty plea to one count of second-degree sexual offense because he was not fully advised on the record of his constitutional rights. We reversed, observing that the post conviction court had failed to consider the testimony of the defendant's trial counsel that he had advised the defendant of his constitutional rights on three separate occasions. *Id.* at 478–79, 837 A.2d 238. Thus, in *State v. Gutierrez,* there was evidence in the record that allowed this Court to conclude that the defendant had been adequately informed of his constitutional rights.

The appellant did acknowledge at the beginning of the plea hearing that he "under[stood] the plea offer." This was not tantamount to acknowledging that he understood the nature and elements of first-degree burglary, however. An accused can understand the terms of a plea agreement without knowing the nature and elements of the charge to which the plea applies. Indeed, the questions and answers that followed the appellant's acknowledgment of understanding the plea agreement concerned the terms of the plea, not the nature or elements of the crime of first-degree burglary.

By contrast, in one of the guilty pleas in *Priet*, the defendant represented that he and his lawyer not only had discussed the plea offer but also had discussed the facts of the case and his possible defenses.[9] One federal court post *Bradshaw v. Stumpf*, has held that a representation by the defendant at the plea hearing that he and his lawyer discussed the case, including the facts and defenses, is a sufficient basis for a trial judge reasonably to infer that the discussion covered the nature and elements of the crime. *Desrosier v. Bissonnette*, 502 F.3d 38, 42 (1st Cir.2007) (holding that defendant's statement at plea hearing that he and his lawyer had discussed the "defenses" and the "pros and cons of having a trial," together with defense counsel's representation at the hearing that he and defendant had "discussed" and "assessed everything" were sufficient for the trial judge to find that the defendant knew the nature of second-degree murder when he pleaded guilty to it); *see also State v. Reid*, 277 Conn. 764, 769, 781–85, 894 A.2d 963 (2006) (defendant's statement at plea hearing that his lawyer "went over the law with [him], as it relates to assault in the second degree" was sufficient basis for trial court to conclude that defendant was pleading guilty with

---

9. As noted above, there was even stronger evidence of knowledge in the other two consolidated cases in *Priet*. In one, the defendant represented at the plea hearing that his defense attorney had explained the elements before the defendant entered into the plea; and in the other the defendant explained that he knew the difference between second-degree murder (to which he was pleading guilty) and first-degree murder.

knowledge of nature and elements of the crime). In the case at bar, however, there was no similar representation at the plea hearing, either by the appellant or his lawyer.

The State's last argument does not have merit either. It maintains that the appellant was informed adequately of the nature and elements of first-degree burglary because, at his arraignment, he signed the receipt acknowledging that he had been informed of the charges against him. The record indeed reflects that on January 4, 2007, the appellant signed a "receipt" for the "Initial Appearance Report," in which he checked language stating, "I have ... had read to me the offense(s) for which I am charged, the conditions of release, the Notice of Advice of Right to Counsel. I acknowledge receipt of a copy of this form." Neither the Initial Appearance Report nor the receipt lists the elements of any of the charged crimes or describes their nature, however. Thus, the appellant's prior acknowledgment of the charges by signing the receipt was insufficient to establish that he had been properly informed pursuant to Rule 4–242(c).

Tellingly, and in apparent recognition of this Court's considered *dicta* in *Abrams,* the State does not argue that the trial judge could presume from the mere fact that the appellant was represented by counsel that he had been informed of the nature and elements of first-degree burglary and therefore entered into the plea knowingly.

Nor have we found any decision rendered after *Bradshaw* approving a guilty plea when the defendant's knowledge of the nature and elements of the crime was presumed from the fact of representation, without more. In several cases, the courts have referred, approvingly, to the *Henderson* presumption, but their conclusions that the defendants entered into their pleas with knowledge of the nature and elements of their crimes were based on record evidence, not a presumption. *See Desrosier, supra,* and *Reid, supra; State v. Harned,* 281 Kan. 1023, 1046–47, 135 P.3d 1169 (2006) (approving *Henderson* presumption but upholding guilty plea to felony murder when, at the plea hearing, the prosecutor described

the crime of felony murder, identified robbery as the underlying felony, and recited the elements of robbery); and *Tomlin v. State,* 295 Ga.App. 369, 371–72, 671 S.E.2d 865 (2008) (approving *Henderson* presumption but upholding *Alford* plea to voluntary manslaughter when, at the plea hearing, the defendant told the court that he had discussed the nature of the charge with his lawyer, and that he understood the questions (including whether the charges had been explained to him) on the Plea of Guilty form he had signed).

In two cases decided after *Bradshaw,* state appellate courts have held that a represented defendant entered into a plea without knowledge of the nature and elements of the crime.

In *State v. Crowe,* 168 S.W.3d 731 (Tenn.2005), the defendant pleaded *nolo contendere* to facilitation of first-degree murder. At the plea hearing, the court did not discuss with the defendant the nature and elements of the crime; defense counsel also did not do so and did not advise on the record that he previously had done so. The indictment had charged the defendant with murder, not facilitation. In a hearing on his motion to withdraw guilty plea, the defendant testified that he always had taken the position with his lawyer that he merely was present at the scene of the murder, and had not participated or assisted in any way.

In holding that the *nolo contendere* plea was not entered into with knowledge of the nature and elements of the crime of facilitation, the court offered a thorough analysis of the effect of *Bradshaw* on the *Henderson* presumption:

> The United States Supreme Court has recently again emphasized that a trial judge need not personally "explain the elements of each charge to the defendant on the record" so long as "the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *See [Bradshaw,* 545 U.S. at 183, 125 S.Ct. 2398]. We also agree that a reviewing court may be able to determine that a defendant gained from other sources an adequate understanding of the offense and notice of the nature of the charge to which he or

she is entering a plea, even if a trial court fails to comply with Rule 11(c)(1). For example, the defendant may be informed of the nature of the offense by the allegations of the indictment. *See, e.g., Henderson,* 426 U.S. at 649 n. 2, 96 S.Ct. 2253 (White, J. concurring) ("In those cases in which the indictment is read to the defendant by the court at arraignment or at the time of his plea, his plea of guilty may well be deemed a factual admission that he did what he is charged with doing so that a judgment of conviction may validly be entered against him."); *Bryan [v. State,* 848 S.W.2d 72, 76 (Tenn.Crim.App.1992) ] (rejecting the defendant's claim that he had not understood the nature of the offenses to which he had pleaded guilty and noting that the elements of the offenses had been alleged in the indictment). Another source from which a defendant may gain an understanding of the nature of the offense is the prosecution's summation at the plea submission hearing of the facts relevant to the elements of the plea offense. *See e.g., State v. Johnson,* 253 Conn. 1, 751 A.2d 298, 322 (2000) (citing cases). Furthermore, in some cases the reviewing court may be able to determine that the offense or the relevant element of the offense is a self-explanatory legal term, so simple in meaning that a layperson can be expected to understand it. *See, e.g., Easter v. Norris,* 100 F.3d 523, 526 (8th Cir.1996) (holding that terms "enter" and "intent" in context of burglary did not require further explanation at taking of guilty plea); *United States v. Wetterlin,* 583 F.2d 346, 350 (7th Cir.1978) (stating that charge of "conspiracy" is not a self-explanatory legal term so simple in meaning that it can be expected or assumed that a layperson understands it); *Waits v. People,* 724 P.2d 1329, 1334–35 (Colo. 1986) (holding that district court was not required to define terms "intent," "specific intent," and "theft" for crime of burglary); *State v. Mayer,* 139 Idaho 643, 84 P.3d 579, 584 (Idaho Ct.App.2004) (stating that, "with respect to the element of penetration, the layperson's meaning of 'rape' corresponds with the legal definition set out in [the statute]"); *State v. Young,* 646 So.2d 445, 447 (La.Ct.App.1994) (reject-

ing the defendant's claim that his plea was involuntary and noting that "DWI, fourth offense" is a "crime in which the title conveys its elements"); *see generally* 5 Wayne R. LaFave, *et al., Criminal Procedure*, § 21.4(c) (2d ed. 1999 & 2005 Supp.). Finally, as the United States Supreme Court has recognized, in many cases it will be possible for a reviewing court to determine that the defense lawyer advised the defendant about the nature of the plea offense, even when the trial court fails to do so. [*Bradshaw*, 545 U.S. at 183, 125 S.Ct. 2398] ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty."); *Henderson,* 426 U.S. at 647, 96 S.Ct. 2253. In this case, the record does not reflect that the defendant gained an understanding of the nature of the plea offense from either the trial judge, or defense counsel, or any other source.

168 S.W.3d at 750–51 (citations altered).

In *Jones v. State,* 936 So.2d 993 (Miss.Ct.App.2006), the defendant pleaded guilty to the crime of sexual battery of a minor under the age of 14. He later challenged the plea in a post-conviction proceeding, arguing in part that he did not enter into it knowingly. When the post-conviction petition was dismissed, he appealed. The intermediate appellate court held that the record did not affirmatively show that the guilty plea was made knowingly under *Bradshaw,* and reversed and remanded for a post-conviction hearing. The guilty plea had been entered in a proceeding in which neither the trial judge, nor the prosecutor, nor the defense lawyer had explained the elements of the offense and the prosecutor did not recite a factual basis for the offense. The indictment listed the elements of the crime, however, and, before filing to enter his guilty plea, the defendant had signed a petition that stated, *inter alia,* that his lawyer "ha[d] advised [him] of the elements of the charge to which [he was] pleading." *Id.* at 996.

The *Jones* court's review of the record on appeal revealed that the form petition was "the only evidence in th[e] record

that Jones received an explanation of the nature and elements of the charge" but the form itself did "not list the elements" of the charge. *Id.* at 997. Reading *Bradshaw* as emphasizing "that the record should affirmatively reflect the defendant's knowledge [of the nature and elements of the crime]," the court concluded that boilerplate language in a plea petition that does not itself set forth the nature and elements of the crime is insufficient to show knowledge, even when the form refers to an indictment listing the crime's elements, and nothing else at the plea hearing showed knowledge on the defendant's part. *Id.* at 998.

In the case at bar, considering the totality of the circumstances, we hold that the record as a whole does not establish that the appellant pleaded guilty to first-degree burglary with knowledge of the nature and elements of that crime and that we cannot merely presume that, because the defendant was represented by counsel, he had that knowledge when the plea was accepted.

As we have observed, the record of the plea hearing does not show that anyone (the court, defense counsel, the prosecutor) told the appellant the elements of first-degree burglary. Indeed, the elements of that crime never were stated. There was no representation by the appellant that he knew the nature and elements of the crime or that his lawyer had at some time told him the nature and elements of the crime. There was no representation by the appellant that he and his lawyer had discussed the "charges," the underlying facts, and/or his possible defenses. There was no evidence that the appellant had been given a form or document setting forth the nature and elements of first-degree burglary. There was no finding on the record of the plea hearing that the appellant knew the nature of first-degree burglary.

To be sure, "burglary" is not an obscure crime, like facilitation of murder, or one that has such a generic name that one would not know the elements by hearing the crime, like sexual battery or sex offenses in degrees. Maryland has codified various types of burglary, and still recognizes burglary as a common law crime. *McKenzie v. State*, 407 Md. 120, 123, 962

A.2d 998 (2008); *Warfield v. State*, 315 Md. 474, 493, 554 A.2d 1238 (1989). The codifications establish four degrees of burglary and three additional specific types of burglary.[10] There are significant substantive differences between the elements of the four degrees of burglary, including the element of intent.[11]

The appellant was charged with first-degree burglary, which requires proof of intent to commit theft or a crime of violence, and third-degree burglary, which only requires proof of intent to commit a crime. The indictment does not allege any intent. *See* CL § 6–210(a) ("An indictment, information, warrant, or other charging document for burglary or another crime under this subtitle is sufficient if it substantially states: '(name of defendant) on (date) in (county) did break and enter (describe property) or (describe other crime) in violation of (section violated) against the peace, government, and dignity of the State.' "). Indeed, the language in the third-degree burglary count is virtually identical to that in the first-degree burglary count. The maximum prison sentence for first-degree burglary is 20 years, and for third-degree burglary is only 10 years, a significant difference. *Id.* § § 6–202(b), 6–204(b).

The record in the case at bar does not show that the appellant was informed of the nature and elements of first-

---

**10.** In addition to the four statutory degrees of burglary, the Maryland Code proscribes rogue and vagabond burglary of a motor vehicle, CL § 6–206, burglary with a destructive device, *id.* § 6–207, and breaking and entering a research facility. *Id.* § 6–208.

**11.** First-degree burglary is "break[ing] and enter[ing] the dwelling of another with the intent to commit theft or a crime of violence." CL § 6–202(a). Second-degree burglary subsumes various forms of storehouse burglary. One form of second-degree burglary is the "break[ing] and enter[ing] of] the storehouse of another with the intent to commit theft, a crime of violence, or arson in the second degree." *Id.* § 6–203(a). Another form of second-degree burglary is the "break[ing] and enter[ing] of] the storehouse of another with the intent to steal, take, or carry away a firearm." *Id.* § 6–203(b). Third-degree burglary proscribes breaking and entering "the dwelling of another with the intent to commit a crime." *Id.* § 6–204(a). Fourth-degree burglary encompasses a variety of crimes, some with specific intent and others merely with general intent. *Id.* § 6–205. *See Herd v. State*, 125 Md.App. 77, 724 A.2d 693 (1999), for an extensive analysis of this statute.

degree burglary during the plea hearing or any time after being charged. Of course, unlike in *Henderson,* there was no affirmative evidence that the appellant was *never* advised of that crime before pleading guilty. We have not uncovered any case decided post-*Bradshaw,* however, that has applied a presumption that a defendant pleaded guilty with knowledge of the nature and elements of the crime in the absence of any record evidence that he did so. As we said in *Abrams,* it appears, after *Bradshaw,* that a "knowledge of the nature and elements of the crime" presumption should not arise from legal representation alone. The record in this case does not show that the appellant knew the nature and elements of the charge of first-degree burglary when he entered his guilty plea. Accordingly, the plea must be vacated.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY BALTIMORE COUNTY.**