18 A.3d 60

**STATE of Maryland**

v.

**Demetrius DAUGHTRY.**

**No. 81, Sept. Term, 2010.**

Court of Appeals of Maryland.

April 25, 2011.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Petitioner.

Amy E. Brennan, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

HARRELL, J.

We re-visit here a line of Maryland cases involving Maryland Rule 4–242(c) and knowing and voluntary guilty pleas, beginning largely with *State v. Priet,* 289 Md. 267, 288, 424 A.2d 349, 359 (1981). Our principal inquiry is whether that line of cases is affected by the Supreme Court's decision in *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005). The State of Maryland ("the State" or "Petitioner") challenges here the judgment of the Court of Special Appeals vacating Demetrius Daughtry's ("Daughtry" or "Respondent") guilty pleas in the Circuit Court for Prince George's County, reasoning that Daughtry's "guilty plea was defective because the *voir dire* did not show it was knowingly, voluntarily, and intelligently entered."

We hold, for reasons to be explained more fully *infra,* that allowing a trial court, in ensuring that a guilty plea is knowing, voluntary, and entered intelligently, to rely essentially on nothing more than a presumption that "in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of . . . what he is being asked to admit" runs contrary to Rule 4–242's requirement that there be an adequate examination "on the record in open court." Aside from Daughtry offering a bare affirmative answer to the trial court's query, "Have you talked over your plea with your lawyer?," there is no record evidence tending to show that Daughtry's plea was entered knowingly and voluntarily. Accordingly, we affirm the judgment of the Court of Special Appeals.

## FACTS AND LEGAL PROCEEDINGS

On the afternoon of 14 December 2005, officers of the Prince George's County Police Department raced to Oxon Hill to respond to the report of a shooting. Upon arriving at the scene, the officers observed a vehicle, containing passengers matching descriptions given to the 911 dispatcher by a witness, leaving the scene at a high rate of speed. The officers followed the vehicle in hot pursuit into the District of Colum-

bia, at which time two occupants exited the vehicle and fled on foot.

One of the occupants—Daughtry—was apprehended and transported to the Metropolitan (DC) Police Department Violent Crime Branch. He gave a statement regarding his involvement in the matter. Apparently,[1] Respondent met Adrian Ashton and decided to visit one Anthony Brown in Oxon Hill and rob him of some marijuana. Upon entering Brown's apartment, there was a struggle between Ashton and Brown, at which point Daughtry fired a handgun in the direction of Brown, grabbed some marijuana, and fled the apartment.

Brown was pronounced dead at the scene. An autopsy revealed that the cause of Brown's death was multiple gunshot wounds. The manner of death was homicide.[2] The doctor conducting the autopsy recovered two bullets which were given to a police technician. The technician identified the two bullets as being a .45 caliber bullet and a .40 caliber bullet. Recovered from Daughtry and Ashton, upon their apprehension, were .45 caliber and .40 caliber handguns.

On 17 January 2006, in the Circuit Court for Prince George's County, Daughtry was charged by indictment with murder, robbery, robbery with a deadly weapon, and use of a handgun in the commission of a felony or a crime of violence. His trial counsel entered his appearance on 6 February 2006. Daughtry negotiated with the State to plead guilty to first-degree murder and use of a handgun in the commission of a felony or a crime of violence.

On 5 September 2006, at the plea hearing, the following colloquy ensued:

---

**1.** The facts regarding the underlying offenses are gleaned from the prosecutor's recitation of the agreed statement of facts at the plea hearing.

**2.** *See, e.g., Sippio v. State,* 350 Md. 633, 643, 714 A.2d 864, 869 (1998) (discussing the distinction between "cause of death" and "manner of death").

[COURT]: Sir, would you please stand and tell me your full name?

[RESPONDENT]: Demetrius Daughtry.

[COURT]: And how old are you?

[RESPONDENT]: Twenty-one.

[COURT]: What was the last grade of school that you finished?

[RESPONDENT]: Tenth.

[COURT]: Are you able to read, write and understand English?

[RESPONDENT]: Yes.

[COURT]: *Have you talked over your plea with your lawyer?*

[RESPONDENT]: *Yes.*

[COURT]: Is this your decision?

[RESPONDENT]: Yes.

(Emphasis added.) The Circuit Court agreed to the sentencing terms of the plea agreement—life imprisonment, suspend all but thirty years—in exchange for Daughtry's cooperation in the investigation and prosecution of Ashton.[3]

On 19 August 2008, Daughtry's appellate counsel filed a Supplemental Application for Leave to Appeal, asserting that Daughtry's plea of guilty should be vacated because the Circuit Court judge did not "determine on the record that defense counsel had advised [him] of the elements of first degree murder." [4] The Court of Special Appeals directed the State to respond to Daughtry's claim and explain "why the judgment entered in this case should not be reversed because, as part of the guilty plea voir dire, Daughtry was not informed

---

3. On 25 January 2008, after Respondent refused to testify at Ashton's trial, the Circuit Court imposed a sentence of life imprisonment, plus twenty-years, for his pleas of guilty to first-degree murder and use of a handgun in the commission of a felony or a crime of violence.

4. This Supplemental Application for Leave to Appeal followed a 1 February 2008 Notice of Appeal, which the Court of Special Appeals docketed as an Application for Leave to Appeal.

that he was pleading guilty to first-degree murder and was not advised of the elements of the crime of first-degree murder." The State complied.

In an unreported, per-curiam opinion, the Court of Special Appeals granted Daughtry's Application for Leave to Appeal, and vacated his convictions, explaining:

> In this case all that applicant said was that he had "talked over his plea" with counsel. While this statement may have been adequate to assure a finding that applicant understood the nature of the proceeding, it did not, in any way, assure that he understood the elements of the charge of first-degree murder.... Consequently, the *voir dire* conducted in this case failed to show that the plea met the required knowing, voluntary, and intelligent standard [of Maryland Rule 4–242 and relevant caselaw].[5]

The State filed timely a Petition for Writ of Certiorari, which we granted, *State v. Daughtry*, 415 Md. 608, 4 A.3d 512 (2010), to consider whether:

1. As a matter of first impression, did the Supreme Court's opinion in *Bradshaw v. Stumpf*, 545 U.S. 175[, 125 S.Ct. 2398, 162 L.Ed.2d 143] (200[5] ), eliminate the long-standing presumption set forth in *Henderson v. Morgan*, 426 U.S. 637[, 96 S.Ct. 2253, 49 L.Ed.2d 108] (1976), that "even without ... [an] express representation" by defense counsel that the nature of the offense to which a defendant enters a plea of guilty "has been explained to" the defendant "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to

---

**5.** Daughtry also argued, in his Supplemental Application for Leave to Appeal Guilty Plea, that his "guilty plea was not made knowingly and voluntarily because he was not informed that by pleading guilty he was waiving the presumption of innocence." The Court of Special Appeals stated that, considering its decision the lack of advisement of the elements of the crime of first-degree murder, it need not reach the presumption-of-innocence issue. This second issue is not before this Court.

give the accused notice of ... what he is being asked to admit"?

2. If the *Henderson* presumption is no longer viable, should the intermediate appellate court's opinions in *Abrams* [*v. State*, 176 Md.App. 600, 933 A.2d 887 (2007),] be given retrospective application?

For reasons to be explained more fully *infra*, the colloquy in the present case between the trial judge and Daughtry was insufficient to show that Daughtry was pleading guilty "with understanding of the nature of the charge" as required by Maryland Rule 4–242(c), and, accordingly, we affirm the judgment of the Court of Special Appeals. Further, we hold that, because our opinion in the present case does not represent a departure from our jurisprudence regarding the voluntariness of guilty pleas, this opinion must be given full retrospective application.

## ANALYSIS

### I. *Standard of Review*

The State asserts that the caselaw of Maryland and the federal courts, epitomized essentially in the cases of the United States Supreme Court, dictate a result different than that reached by the Court of Special Appeals. It is well settled that where a case "involves an interpretation and application of ... case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a [nondeferential] standard of review." *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006); *see Ali v. CIT Tech. Fin. Servs., Inc.*, 416 Md. 249, 257, 6 A.3d 890, 894 (2010). Further, to the extent that the State argues that the Maryland Rules require a result different than that reached by the intermediate appellate court, we note that "[b]ecause our interpretation of ... the Maryland Rules [is] appropriately classified as [a] question[ ] of law, we review the issues [without deference to the lower courts' decisions] to determine if the trial court was legally correct in its rulings on these matters." *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 80–

81 (2004); *see Owens v. State,* 399 Md. 388, 402–03, 924 A.2d 1072, 1080 (2007).

## II. Development of Maryland Rule 4–242 and Its Progeny

### A. Henderson

In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), Henderson, indicted initially for first-degree murder, pleaded guilty to second-degree murder, and was sentenced to a term of imprisonment of twenty-five years to life. *See Henderson,* 426 U.S. at 642, 96 S.Ct. at 2256, 49 L.Ed.2d at 113. At the plea hearing,

> [i]n direct colloquy with the trial judge [Henderson] stated that his plea was based on the advice of his attorneys, that he understood he was accused of killing Mrs. Francisco in Fulton County[, New York], that he was waiving his right to a jury trial, and that he would be sent to prison. There was no discussion of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with [Henderson], and no reference of any kind to the requirement of intent to cause the death of the victim.

*Henderson,* 426 U.S. at 642–43, 96 S.Ct. at 2256, 49 L.Ed.2d at 113. Henderson initiated proceedings in state court to have his guilty plea vacated on grounds that he entered into the plea involuntarily, which proved unsuccessful. *See Henderson,* 426 U.S. at 638–39, 96 S.Ct. at 2255, 49 L.Ed.2d at 111. Having exhausted pursuit of any available potential remedy in state court, Henderson filed a petition for writ of habeas corpus in the United States District Court for the District of New York. *See Henderson,* 426 U.S. at 639, 96 S.Ct. at 2255, 49 L.Ed.2d at 111. Henderson averred, among other things, that he entered into the plea involuntarily because "he was not aware ... that intent to cause death was an element of the offense." *Id.* The district court denied Henderson's petition for writ of habeas corpus and, thereafter, he appealed to the Second Circuit Court of Appeals. *See id.*

The Second Circuit reversed the district court's decision and remanded for it to conduct an evidentiary hearing on the issues raised by Henderson. *See id.* After conducting an evidentiary hearing, the District Judge concluded that Henderson "was not advised by counsel or court, at any time, that an intent to cause ... the death of the victim was an essential element of Murder 2nd degree"; thus, that the plea was involuntary. *Henderson,* 426 U.S. at 640, 96 S.Ct. at 2255, 49 L.Ed.2d at 112. The Second Circuit, without written opinion, affirmed. *See id.* The Supreme Court issued a writ of certiorari to determine "whether a defendant may enter a voluntary plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense." *Henderson,* 426 U.S. at 638, 96 S.Ct. at 2254, 49 L.Ed.2d at 111.

█ The Court began its analysis by emphasizing that a guilty plea must be voluntary, not only in a colloquial sense, but "in a constitutional sense." *Henderson,* 426 U.S. at 645, 96 S.Ct. at 2257, 49 L.Ed.2d at 114. That is, a "plea c[annot] be voluntary in th[at] sense [unless] it constitute[s] an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson,* 426 U.S. at 645, 96 S.Ct. at 2258, 49 L.Ed.2d at 114 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859, 862 (1941)). Ultimately, the Court held that "it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary," considering that there was nothing in the record—either a finding at trial or an admission—suggesting that Henderson had the requisite intent for murder, or that Henderson had been aware that intent was a necessary element of murder. *Henderson,* 426 U.S. at 646, 96 S.Ct. at 2258, 49 L.Ed.2d at 115. The importance of *Henderson* for purposes of the present case, however, was the Supreme Court's observation that:

Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by

defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, *it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.*

*Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258–59, 49 L.Ed.2d at 115–16 (emphasis added).[6]

Because, as we will *see infra,* it is this language—*i.e.,* "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit"—that is central to the present case, we think it important to analyze this statement and its application to understand its significance as we continue our analysis. First, although the Supreme Court mentioned a "presumption," it did not apply it to the facts in Henderson. That is, although the Court noted that "it may be appropriate ... in most cases," apparently Henderson was not an appropriate case to apply the presumption, considering "the trial judge [at the evidentiary hearing on remand] found as a fact that the element of intent was not explained to [Henderson]." *Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258–59, 49 L.Ed.2d at 116. Accordingly, in *Henderson,* because the presumption was not necessary to the Court's holding, the discussion of the presumption was clear dicta.[7] *See, e.g., Miller v. State,* 185

---

**6.** Further, in a footnote, the Court stated:

There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; we assume it does not. Nevertheless, intent is such a critical element of the offense of second-degree murder that notice of the element is required.

*Henderson,* 426 U.S. at 647 n. 18, 96 S.Ct. at 2258 n. 18, 49 L.Ed.2d at 115 n. 18. This statement is consistent with our holding that there is no requirement "that the precise legal elements comprising the offense be communicated to the defendant as a prerequisite to the valid acceptance of his guilty plea." *State v. Priet,* 289 Md. 267, 288, 424 A.2d 349, 359 (1981).

**7.** We have defined dicta, or *obiter dictum,* as "a judicial comment made while delivering a judicial opinion, but one that is *unnecessary to the*

Md.App. 293, 301, 970 A.2d 332, 337 (2009) (noting that the Supreme Court "observed," as opposed to "held," that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense"); *Dumas v. State,* 439 So.2d 246, 251 (Fla.Dist.Ct.App.1983) (characterizing the presumption in *Henderson* as dicta); *People v. Van Bui,* 2008 Guam 8 ¶ 17, 2008 WL 2486137 (same). Finally, we re-emphasize the precise wording in *Henderson:* "[I]t *may* be appropriate to presume that in *most cases,* defense counsel routinely explain the nature of the offense. . . ." Thus, even if this language in *Henderson* were a holding, it seems clear to us that such a presumption was not intended to apply all of the time and in every case.[8]

## B. Maryland Law Before *Priet*

In *State v. Priet,* 289 Md. 267, 275, 424 A.2d 349, 353 (1981), we summarized Maryland law regarding the validity of guilty pleas before the promulgation of Maryland Rule 731(c), the predecessor to current Rule 4–242:

---

decision in the case. . . ." *Office of the Pub. Defender v. State,* 413 Md. 411, 458, 993 A.2d 55, 84 (2010) (quoting BLACK'S LAW DICTIONARY 1177 (9th ed. 2009) (Bell, C.J., dissenting)). We are mindful that in *Schmidt v. Prince George's Hospital,* 366 Md. 535, 551, 784 A.2d 1112, 1121 (2001), we iterated that:

> When a question of law is raised properly by the issues in a case and the Court supplies a deliberate expression of its opinion upon that question, such opinion is not to be regarded as *obiter dictum,* although the final judgment in the case may be rooted in another point also raised by the record.

In *Henderson,* however, because the District Judge found explicitly that it had not been explained to Henderson that intent was a required element for murder, the "presumption" was not "raised properly by the issues in [the] case."

8. The Supreme Court, in *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), applied the *Henderson* presumption, stating: "Under *Henderson,* respondent must be presumed to have been informed . . . of the charges on which he was indicted." Elsewhere in the opinion, however, the Court appeared to reiterate that the presumption is not to be applied in every case. *See Marshall,* 459 U.S. at 436 n. 5, 103 S.Ct. at 852 n. 5, 74 L.Ed.2d at 659 n. 5 (*"Whatever may be the case otherwise,* there is surely no obstacle to use of the presumption in a *case such as this* . . . .") (emphasis added).

Consistent with the requirements of due process, the decisions of this Court have always required that a guilty plea, to be valid, must be entered voluntarily and intelligently. The fundamental rule outlined in our cases is that a plea of guilty may be entered under circumstances showing a voluntary desire on the part of the accused to do so, with an intelligent understanding of the nature of the offense to which he is pleading guilty and the possible consequences of such a plea. It was the law of this State, prior to the adoption of Rule 731 c, that no specific ritual was required to be followed by the trial judge in order to satisfy himself of the voluntary character of the plea and of the fact that the defendant understands the nature and effect of a plea of guilty. [We have said] ... that it [i]s the duty of the trial judge to ascertain that the guilty-pleading defendant is aware of the nature of the charges and the consequences of a guilty plea. In discharging this duty, the trial judge is not required ... ritualistically and personally [to] advise the accused of these matters, it being sufficient if the defendant is made aware of the consequences of his guilty plea regardless of the source whence the information comes.

(Emphasis added) (internal citations and quotation marks omitted). Further, in *Davis v. State*, 278 Md. 103, 114, 361 A.2d 113, 119 (1976), decided a year before the effective date of Rule 731(c), we stated that trial judges need not "enumerate certain rights, or go through any particular litany, before accepting a defendant's guilty plea; rather, ... the record must affirmatively disclose that the accused entered his confession of guilt voluntarily and understandingly." In *Davis* we recognized that in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court opined that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Davis*, 278 Md. at 115, 361 A.2d at 120 (quoting *Alford*, 400 U.S. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168). In determining whether a guilty plea meets this bar, "courts usually [have] looked to the totality of

the circumstances as reflected in the entire record." *Davis,* 278 Md. at 109, 361 A.2d at 116.

Against this historical backdrop, the Court adopted Rule 731, which became effective on 1 July 1977. *See Priet,* 289 Md. at 277, 424 A.2d at 354 ("Rule 731 c . . . plainly comports with the constitutional requirement that guilty pleas must be voluntarily and intelligently entered."). The version of Rule 731 with which the Court in *Priet, supra,* was concerned, provided, in pertinent part:

c. *Plea of Guilty*

The court may not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge and the consequences of the plea. . . .

## C. *Priet*

Less than four years after Rule 731 became effective, this Court, in *Priet* had its first opportunity to determine when a defendant has the requisite "understanding of the nature of the charge." The Court in *Priet* considered actually three consolidated criminal cases; because the present case compels us to revisit *Priet,* we think it important to give a brief recitation of the pertinent facts of each of these cases.

In the flagship case, Brian Dale Priet plead guilty to robbery with a dangerous and deadly weapon. *Priet,* 289 Md. at 269–70, 424 A.2d at 350. The trial court, as part of its questioning of Priet, asked him: "Now, you are asking us to enter a guilty plea to the charge of robbery with a dangerous and deadly weapon, are you not?," to which Priet replied: "Yes, sir." *Priet,* 289 Md. at 270, 424 A.2d at 350. "In response to further questions from the court, Priet acknowledged that he had discussed his guilty plea with his attorney, as well as the relevant facts of the case and possible defenses to the crime." *Priet,* 289 Md. at 270, 424 A.2d at 351. In the *Pincus* case, Robert Wayne Pincus plead guilty to second-degree murder. *Priet,* 289 Md. at 272, 424 A.2d at 352. As part of the plea hearing, "[t]he prosecutor . . . asked Pincus

whether he understood the difference between first and second degree murder. Pincus replied that he did and that he had taken the difference in punishment into consideration in pleading guilty to second degree murder." *Priet,* 289 Md. at 273, 424 A.2d at 352. Finally, in the *Vandiver* case, Gary Vandiver plead guilty to robbery. *See id.* In response to a question by his counsel, "Vandiver acknowledged ... that he had discussed 'the elements of robbery' with him and understood 'what the offense of robbery consist[s of], [and] what burden the State would have to prove' to obtain a conviction for robbery." *Priet,* 289 Md. at 274, 424 A.2d at 352.

Analyzing the text of Rule 731(c) and distilling the caselaw from other jurisdictions, we explained:

> Consistent with the principles espoused in the majority of these state and federal cases, and with the rationale underlying our decision in *Davis*[, *supra* ], Rule 731 c does not impose any ritualistic or fixed procedure to guide the trial judge in determining whether a guilty plea is voluntarily and intelligently entered. The rule does not require that the precise legal elements comprising the offense be communicated to the defendant as a prerequisite to the valid acceptance of his guilty plea. Rather, by its express terms, the rule mandates that a guilty plea not be accepted unless it is determined by the court, after questioning of the defendant on the record, that the accused understands the "nature" of the charge. This, of course, is an essential requirement of the rule and must be applied in a practical and realistic manner. It simply contemplates that the court will explain to the accused, in understandable terms, the nature of the offense to afford him a basic understanding of its essential substance, rather than of the specific legal components of the offense to which the plea is tendered. The nature of some crimes is readily understandable from the crime itself. Necessarily, the required determination can only be made on a case-by-case basis, taking into account the relevant circumstances in their totality as disclosed by the record, including, among other factors, the complexity of the charge, the personal characteristics of the

accused, and the factual basis proffered to support the court's acceptance of the plea.

*Priet,* 289 Md. at 288, 424 A.2d at 360. Finally, the test announced "is whether, considering the record as a whole, the trial judge could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty." *Priet,* 289 Md. at 291, 424 A.2d at 361.

Ultimately, we concluded that the Court of Special Appeals erred in each of the three cases "when . . . it concluded that the record did not disclose the requisite inquiry necessary for a determination that the defendants understood the nature of the charge to which each had entered a guilty plea." We explained:

> [T]he record demonstrates that each defendant was questioned at length concerning the voluntariness *vel non* of his plea, was informed of the penalty for the offense, and of the constitutional and other rights that would be waived by the entry of a guilty plea. While in each case the defendant was youthful and possessed of little formal education, each was represented by counsel with whom he acknowledged discussing the case and his guilty plea. As to this, we note the observation made by the Supreme Court in *Henderson* that unless the contrary clearly appears from the record (as was true in *Henderson*), "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."

*Priet,* 289 Md. at 290, 424 A.2d at 361 (internal citations omitted).

In view of the "totality of the circumstances" test, it is prudent to reflect on the circumstances the Court in *Priet* considered in reversing each of the cases.

### *Priet*

[The trial judge] ascertained from Priet's personal responses to his questions that the defendant understood that he was pleading guilty to robbery with a dangerous and deadly weapon. Priet acknowledged that he had discussed

his plea, the facts of the case and possible defenses to the charge with his attorney. The factual basis for the plea, to which Priet signified agreement, disclosed a course of criminal conduct clearly constituting the offense of armed robbery. Priet's responses to all questions asked of him by [the trial judge] were positive and concise, indicating an understanding of what he had been told. The armed robbery charge was a simple one.

*Priet,* 289 Md. at 291, 424 A.2d at 361.

### Pincus

After the indictment charging Pincus with having "feloniously, wilfully and of deliberately premeditated malice aforethought" murdered Robert Alverson was read to him, [the trial judge] questioned the defendant at length concerning his guilty plea to second degree murder. He ascertained from Pincus' personal responses that he understood that he was charged with having murdered Alverson on September 30, 1979, and he personally acknowledged to the judge that he committed the offense. The record discloses that Pincus said he knew the difference between first and second degree murder and had pled guilty to the latter degree of murder because the punishment was less than for first degree murder. The factual basis for the plea showed that after Pincus stabbed the victim five or six times he thereafter stomped upon him with his shoes until he was dead. Pincus said he committed the murder because the victim had disturbed him, and he had become emotional as a result.

*Priet,* 289 Md. at 291–92, 424 A.2d at 361.

### Vandiver

After Vandiver, through his counsel, entered an *"Alford* plea" to the charge of robbery, he took the stand and was extensively questioned by his counsel. Vandiver acknowledged during his testimony that he had discussed the elements of robbery with his counsel and understood what he had been told. He said that he understood the nature of his *Alford* plea and that even though he claimed that he was

not guilty, he recognized, in entering the guilty plea, that the State had overwhelming evidence to convict him, and that his guilty plea was in exchange for a favorable plea agreement. He personally acknowledged that his guilty plea was to the offense of robbery. Vandiver agreed with the State's proffered statement of the facts which demonstrated a course of conduct constituting robbery, namely, that the State's evidence would establish that Vandiver accosted the victim on the street, threw her to the ground and seized the valuable contents of her purse.

*Priet,* 289 Md. at 292, 424 A.2d at 362.

Although, in our view, the presumption language in *Henderson* is dicta, the significance and import of similar language replicated in *Priet* is less clear because *Priet* involved three cases. To begin, it seems clear that the presumption in the *Vandiver* case was dicta, as "Vandiver acknowledged during his testimony that he had discussed the elements of robbery with his counsel and understood what he had been told." *Priet,* 289 Md. at 292, 424 A.2d at 362. We did not need to employ a presumption that defense counsel, in representing his/her client contemplating a plea arrangement, routinely explains the nature of the offense to his or her client, considering there was an on-the-record finding that Vandiver's counsel had informed him so. Further, we conclude that mention of the presumption was dicta in the *Pincus* case. There, "the record disclose[d] that Pincus said he knew the difference between first and second degree murder...." *Priet,* 289 Md. at 291–92, 424 A.2d at 361. We think it reasonable to infer that a defendant who claims to comprehend the subtle differences between first- and second-degree murder comprehends also the elements that both degrees share, making such a defendant aware of the nature of the offense. *See Willey v. State,* 328 Md. 126, 138, 613 A.2d 956, 961 (1992) (noting the "fine and often difficult distinction between first degree murder and ... second degree murder").[9]

---

9. Even if we are wrong-headed to assume that one who purports to comprehend the difference between first- and second-degree murder

■ Arguably, the only case of the three that, but for the application of the presumption, might have been decided differently (*i.e.*, was not dicta in the case), is the eponymous *Priet* case. *See Lovell v. State*, 347 Md. 623, 635, 702 A.2d 261, 267 (1997) (stating that the Court in *Priet* "*held*" that "[i]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense"). There, as in the present case, "Priet acknowledged that he had discussed his plea . . . with his attorney." Further, and also as in the present case, "[t]he factual basis for the plea . . . disclosed a course of criminal conduct clearly constituting the offense of armed robbery." In this sense, then, the *Priet* case is similar to the case at present: the State may prevail in arguing that the defendant understood the nature of the charges only if the presumption is applied.[10]

Pursuant to a Rules Revision effective 1 July 1984, Title 4 of the Maryland Rules replaced Chapter 700 of the former Rules

also comprehends the nature of either charge, we think that such a case—*i.e.* one in which a defendant states, on the record, that he understands the difference between first- and second-degree murder—would be an appropriate one in which to apply the presumption.

**10.** We note, however, in contrast to the present case, Priet acknowledged discussing, not only his plea, but "the facts of the case and possible defenses to the charge with his attorney." *Priet*, 289 Md. at 291, 424 A.2d at 361. Further, we recognized also in *Priet* that "[t]he armed robbery charge was a simple one." *Id*. We were referring likely to the notion, stated earlier in the opinion, that "[t]he nature of some crimes is readily understandable from the crime itself." *Priet*, 289 Md. at 288, 424 A.2d at 360.

Except as provided otherwise in Maryland Code (2002), Criminal Law Article, § 3–401(e), robbery retains its judicially-determined meaning, *i.e.*, "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." *Coles v. State*, 374 Md. 114, 123, 821 A.2d 389, 394 (2003) (quoting *Darby v. State*, 3 Md.App. 407, 413, 239 A.2d 584, 588 (1968)). We count at least six elements to this judicially-determined definition of robbery (and a seventh under Crim. Law § 3–403, which requires a "dangerous weapon"). Considering this laborious and multi-element definition of armed robbery, to the extent we were suggesting, in *Priet*, the view that the nature of the charge of armed robbery is readily understandable from the words "armed robbery," we disabuse ourselves of that notion henceforth.

(and the former home of Rule 731(c)). Rule 731(c) was re-numbered Rule 4–242(c) and, at all times pertinent to the present case,[11] provided:

> The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea. . . .

## D. *Bradshaw*

In *Bradshaw v. Stumpf*, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), the Supreme Court again had the opportunity to rule, in a habeas corpus context, whether a defendant's plea was entered with the requisite knowledge of the nature and elements of the crime. Relevant to the present case,[12] in *Bradshaw*, a defendant pleaded guilty to aggravated murder and was sentenced ultimately to death. *See Bradshaw*, 545 U.S. at 180, 125 S.Ct. at 2403, 162 L.Ed.2d at 151. Later, the defendant moved to withdraw his guilty plea, arguing "that [he] had pleaded guilty to aggravated murder without understanding that specific intent to cause death was a necessary element of the charge under [state] law." *Bradshaw*, 545 U.S.

---

11. Effective 1 January 2008 (after the plea hearing in the present case), Rule 4–242(c) provides currently:

> The court may not accept a plea of guilty until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea. . . .

12. The fuller picture of the facts of *Bradshaw v. Stumpf*, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), is more convoluted than we need dwell on here. Much of the Supreme Court's recitation of the facts relates to a second theory upon which the Sixth Circuit Court of Appeals granted relief; namely, that the defendant's "due process rights were violated by the state's deliberate action in securing convictions of both [defendants] for the same crime, using inconsistent theories." *Stumpf v. Mitchell*, 367 F.3d 594, 596 (6th Cir.2004).

at 182, 125 S.Ct. at 2404–05, 162 L.Ed.2d at 152. Having exhausted state postconviction remedies, the defendant filed a habeas corpus petition in federal court. *Bradshaw*, 545 U.S. at 181, 125 S.Ct. at 2404, 162 L.Ed.2d at 152. The federal district court denied relief. *Id.* The Sixth Circuit Court of Appeals reversed, holding that "his guilty plea was unknowing and involuntary because he was manifestly not aware that specific intent was an element of the crime to which he plead guilty...." *Stumpf v. Mitchell*, 367 F.3d 594, 596 (6th Cir. 2004). The Supreme Court issued a writ of certiorari to determine whether the defendant's "plea of guilty to aggravated murder was invalid because he was not aware of the specific intent element of the charge...." *Bradshaw*, 545 U.S. at 182, 125 S.Ct. at 2405, 162 L.Ed.2d at 153.

First, the Court reaffirmed the notion that "[a] guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 748 (1970)). Then, reversing the Sixth Circuit's conclusion that defendant's plea was not entered voluntarily and knowingly, the Court explained:

> But the Court of Appeals erred in finding that Stumpf had not been properly informed before pleading guilty. In Stumpf's plea hearing, his attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge; Stumpf himself then confirmed that this representation was true. See App. 135, 137–138. While the court taking a defendant's plea is responsible for ensuring "a record adequate for any review that may be later sought," *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the

defendant by his own, competent counsel. *Cf. Henderson,*
*supra,* at 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (granting relief
to a defendant unaware of the elements of his crime, but
distinguishing that case from others where "the record
contains either an explanation of the charge by the trial
judge, or at least a representation by defense counsel that
the nature of the offense has been explained to the ac-
cused"). Where a defendant is represented by competent
counsel, the court usually may rely on that counsel's assur-
ance that the defendant has been properly informed of the
nature and elements of the charge to which he is pleading
guilty.

*Bradshaw,* 545 U.S. at 183, 125 S.Ct. at 2405–06, 162 L.Ed.2d
at 153–54.

Regarding *Bradshaw,* Petitioner here argues that "the Su-
preme Court did not signal an intent to eliminate the
*Henderson* presumption that ordinarily 'defense counsel rou-
tinely explain the nature of the offense [to] the accused' in
'sufficient detail' to satisfy the requirement that a defendant's
plea be knowing and voluntary." Respondent, on the other
hand, argues that "[i]n *Bradshaw v. Stumpf* . . . the United
States Supreme Court used language which understandably
caused the Maryland Court of Special Appeals to question the
viability of the [presumption] language from *Henderson*" ex-
plaining that "[t]he [presumption] language used in *Henderson*
*v. Morgan* . . . was glaringly absent from the Court's opinion
in *Bradshaw* . . . . [i]nstead, the *Bradshaw v. Stumpf* Court
stated, '[w]here a defendant is represented by competent
counsel, the court usually may rely on that counsel's assurance
that the defendant has been properly informed of the nature
and elements of the charge . . . .' "

### E. *Post*–Bradshaw *Court of Special Appeals's Cases*

We are aware of three [13] reported post-*Bradshaw* opinions
decided by our intermediate appellate court colleagues con-

---

**13.** A fourth case, *Rivera v. State,* 180 Md.App. 693, 952 A.2d 396 (2008),
*aff'd,* 409 Md. 176, 973 A.2d 218 (2009), decided after *Bradshaw,*

cerning the *Henderson/Priet* presumption, discussed *supra.* Because each presents a slightly different factual scenario, it is only prudent to consider each in turn.

### Abrams

In *Abrams v. State,* 176 Md.App. 600, 604, 933 A.2d 887, 889 (2007), Abrams, in June 1994, pleaded guilty to three counts of uttering. During the plea colloquy, the trial judge informed Abrams that uttering entailed "offering a forged instrument to obtain some benefit you are not entitled to...." *Id.;* see Maryland Code (2002), Criminal Law Article, § 8–103. Further, the record reflected that Abrams received a copy of the statement of charges, read it and understood it, and had reviewed possible defenses with his attorney. *Abrams,* 176 Md.App. at 604, 933 A.2d at 889–90. The trial court accepted Abrams's guilty plea and sentenced him to one-year imprisonment on each count, to run concurrently. *Abrams,* 176 Md. App. at 605, 933 A.2d at 890. In 2005, Abrams was convicted in federal court of conspiracy to distribute fifty grams or more of cocaine base. *Abrams,* 176 Md.App. at 606, 933 A.2d at 890. Because of the previous uttering convictions Abrams was ineligible for a "safety valve" under the Federal Sentencing Guidelines, which could have yielded a reduced sentence. *Id.* Accordingly, in September 2006, Abrams filed in state court a Petition for Writ of Error Coram Nobis, arguing the 1994 guilty plea should be vacated because "he was entitled to be advised of 'the elements of the crime of uttering—among which is the specific intent to defraud ....' [and] because [he] was not adequately informed of this 'critical element,'" his

---

involved a defendant challenging the validity of his prior guilty plea, arguing that he had not entered into the plea with knowledge of the nature and elements of the offense charged. *Rivera,* however, involved a 1997 (*i.e.,* pre-*Bradshaw*) guilty plea. Because the defendant in *Rivera* did "not make a *Bradshaw* argument below [regarding the retrospective application of *Bradshaw*] and did not adequately brief it on appeal," "we declined to address that contention." *Miller v. State,* 185 Md.App. 293, 306 n. 6, 970 A.2d 332, 340 n. 6 (2009). On appeal, we affirmed the Court of Special Appeals, but did not discuss *Henderson, Priet,* or any of the aforementioned cases discussing the voluntariness of guilty pleas.

guilty plea was entered unknowingly and involuntarily. *Abrams,* 176 Md.App. at 619, 933 A.2d at 898.

First, in *Abrams,* the Court of Special Appeals quoted, from *Priet,* the notion that "[t]he Rule [731(c) then, 4–242(c) now] does not require that the precise legal elements comprising the offense be communicated to the defendant as a prerequisite to the valid acceptance of his guilty plea." *Abrams,* 176 Md.App. at 620–21, 933 A.2d at 899 (quoting *Priet,* 289 Md. at 288, 424 A.2d at 359). Next, after mentioning the presumption language in *Priet* (quoting *Henderson* ), the Court detailed the facts, holding, and rationale of *Bradshaw.* The intermediate appellate court, on this point, concluded:

> It appears ... that the *Bradshaw* opinion has effected a significant restriction to the principles enunciated by the Court of Appeals in *Priet.* No longer can a trial judge rely on the presumption that defense counsel has sufficiently explained to the defendant the nature of the offense to which he or she is entering a guilty plea. Instead, the trial judge must either (1) explain to the defendant on the record the nature of the charge and the elements of the crime, or (2) obtain on the record a representation by defense counsel that the defendant has been "properly informed of the nature and elements of the charge to which he [or she] is pleading guilty."

*Abrams,* 176 Md.App. at 622–23, 933 A.2d at 900.

Notwithstanding its refusal to apply the *Henderson/Priet* presumption, the Court of Special Appeals found nevertheless that the plea was entered knowingly and voluntarily, reasoning that "the court's definition of uttering ['offering a forged instrument to obtain some benefit you are not entitled to'] included all of the elements of uttering," and, as such, Abrams "understood the nature and elements of the charges to which he was pleading guilty." *Abrams,* 176 Md.App. at 624, 933 A.2d at 901–02.

### Miller

In *Miller v. State,* 185 Md.App. 293, 970 A.2d 332 (2009), Miller, appearing in court with counsel, pleaded guilty to first-degree burglary. During the plea colloquy, the trial judge

did not explain the nature and elements of first-degree burglary, defense counsel did not represent that he had explained the nature and elements of the crime to [Miller], and [Miller] did not represent that he understood the charge. Neither defense counsel nor the prosecutor explained the nature and elements of first-degree burglary. The only mentions of first-degree burglary during the plea hearing were (1) the prosecutor's statement, "[t]he plea, my understanding of the plea is as follows. Count 1 of the indictment is burglary in the first degree. The guidelines are one to five years incarceration"; and (2) "[Miller]'s statement that he understood the maximum penalty for burglary in the first degree is 20 years' incarceration." *Miller*, 185 Md.App. at 307, 970 A.2d at 340. Although the prosecutor recommended a to a flat fifteen years. *Miller*, 185 Md.App. at 294–95, 970 A.2d at 333. Likely unhappy with this judicial bench-slap, Miller appealed to the Court of Special Appeals, asking whether "the guilty plea *voir dire* establish[ed] that [Miller] had the requisite understanding of the nature and elements of the crime of first-degree burglary?" *Miller*, 185 Md.App. at 295, 970 A.2d at 333.

After discussing *Henderson, Priet, Lonberger,* and *Bradshaw*, the Court of Special Appeals, in *Miller*, discussed its then-recently-decided opinion in *Abrams*, mentioning its statement that "[n]o longer can a trial judge rely on the [*Henderson* ] presumption," pointing out that such language was dicta. *Miller*, 185 Md.App. at 305, 970 A.2d at 339. *But see Castellon–Gutierrez v. United States*, 754 F.Supp.2d 774, 780 (D.Md.2010) (referring to *"Miller's holding* that *Bradshaw* precludes application of the *Henderson* presumption is inconsistent with federal law") (emphasis added). The intermediate appellate court discussed how the facts before it in *Miller* differed from those considered in cases previously by the Court of Special Appeals, Court of Appeals, and Supreme Court:

The case at bar is unlike *Bradshaw v. Stumpf, Abrams v. State,* or *Rivera v. State.* In those cases, at the plea hearings, there either was a representation by the defen-

dant's lawyer that he had previously informed the defendant of the elements of the charge (*Bradshaw*), a representation by the defendant that he had discussed the "charges" with his lawyer (*Rivera*), or an explanation by the judge of the nature and elements of the crime (*Abrams*).

*Miller*, 185 Md.App. at 307, 970 A.2d at 340. The court then explained, and rejected, each voluntarily, holding ultimately that "considering the totality of the circumstances, . . . the record as a whole does not establish that [Miller] pleaded guilty . . . with knowledge of the nature and elements of th[e] crime. . . ." *Miller*, 185 Md.App. at 314, 970 A.2d at 344–45.

First, the State maintained that Miller was informed adequately of the nature of the charges against him by the prosecutor's reading, at the plea hearing, of the agreed statement of facts. *Miller*, 185 Md.App. at 307, 970 A.2d at 340–41. To this, the intermediate appellate court replied that "the statement of facts in support of the guilty plea said nothing to explain the nature and elements of the crime," and that "[a]lthough the statement of facts . . . support[s] a reasonable inference that [Miller] indeed acted with the intent to commit theft, it does not communicate that that intent . . . is an element or part of the nature of the crime." *Miller*, 185 Md.App. at 308, 970 A.2d at 341. Next, to the State's contention that the Miller was informed of the nature of the charges against him "by [Miller]'s statements at the plea hearing that he 'under[stood] the plea offer' and that he had discussed the guilty plea with his lawyer and all his questions had been answered," the Court of Special Appeals concluded that such a contention was not supported by the record.[14] *Id.* And finally, to the State's argument that Miller "was informed adequately

---

14. To this point, the opinion in *Miller* seems to suggest that had Miller stated in open court that he "understood the plea offer," that may have sufficed. Of course, in the present case, Daughtry gave an affirmative answer to the trial court's query, "Have you talked over your plea with your lawyer?" To the extent that *Miller* may be read to imply that a defendant stating simply in open court that he or she "understands the plea offer" suffices under Rule 4–242(c), however, we, of course, are not bound by such an inference.

of the nature and elements of first–degree burglary because, at his arraignment, he signed the receipt acknowledging that he had been informed of the charges against him," the intermediate appellate court responded that "[n]either the Initial Appearance Report nor the receipt [acknowledging that Miller had been informed of the charges against him] lists the elements of any of the charged crimes or describes their nature...." *Miller,* 185 Md.App. at 310, 970 A.2d at 342.

### Gross

In *Gross v. State,* 186 Md.App. 320, 973 A.2d 895 (2009), Gross, represented by counsel, entered an ABA plea [15] to the charge of possession with the intent to distribute fifty grams or more of cocaine. During the plea colloquy, Gross answered in the affirmative to the trial court's query if he "[h]a[d] gone over the charges with your attorney . . . and the elements of the offenses that [he was] charged with." *Gross,* 186 Md.App. at 325, 973 A.2d at 898. Further, at the Coram Nobis hearing, Gross's counsel testified and confirmed that he "went over the elements with [Gross]." *Gross,* 186 Md.App. at 330, 973 A.2d at 900. After the prosecutor recited an agreed statement of facts, the trial court accepted Gross's plea and sentenced him to five-years' incarceration. *See Gross,* 186 Md.App. at 328, 973 A.2d at 899. Thereafter, confronted by the label "career offender" for purposes of the federal sentencing guidelines, Gross filed a petition for Writ of Error Coram Nobis, arguing "that he was denied due process of law because the record failed to show that his plea was entered knowingly and intelligently." *Gross,* 186 Md.App. at 323, 973 A.2d at 896. The Circuit Court denied Gross's Coram Nobis petition. *See id.*

The Court of Special Appeals framed the question before it as: "[W]hether a representation to the plea judge by the defendant that his counsel had discussed with him the elements of the charges he faces will suffice to show that the

---

**15.** *See Gross v. State,* 186 Md.App. 320, 322 n. 1, 973 A.2d 895, 896 n. 1 (2009).

defendant's plea was voluntarily and knowingly entered." *Gross,* 186 Md.App. at 341, 973 A.2d at 907. After discussing *Priet* and *Lonberger,* the Court of Special Appeals stated that the trial judge "complied with the dictates of *Priet* and *Lonberger* because the court was entitled to presume that Gross's counsel explained to him the charges to which he pled guilty in sufficient detail to give Gross notice of what he was being asked to admit." [16] *Gross,* 186 Md.App. at 337, 973 A.2d at 905.

The issue with which the intermediate appellate court wrestled, however, was whether *Bradshaw* and the two earlier Court of Special Appeals cases effected a change in the legal landscape. After examining various post-*Bradshaw* decisions from other jurisdictions, the appellate panel explained that, because Gross "told the plea judge that he had received a copy of the indictment . . . and had discussed the charges and 'gone over' the elements of the charges with his counsel," "it was entirely proper for the court to presume that [Gross] knew the elements of the charge to which he agreed to plead guilty." *Gross,* 186 Md.App. at 350–51, 973 A.2d at 912–13. The Court then reiterated: "We hold that when a defendant, in response to questioning by the court, says on the record that he has discussed the elements of the crime to which he is pleading guilty with his attorney, that representation is sufficient to show that the plea was knowingly entered." *Gross,* 186 Md.App. at 351, 973 A.2d at 913.

### III. *The Present Case*

■ The State concedes that "[i]t is beyond dispute that a defendant who has entered a guilty plea ignorant of the nature

---

**16.** To the extent a reader may think that such a statement elevated (at least in the mind of the Court of Special Appeals) the *Henderson/Priet* presumption language from dicta to a holding, we emphasize that this is not the case. This statement in *Gross* is dicta (*i.e.,* not central to the holding of the case) because, as will be understood more fully *infra,* there was an explicit acknowledgment by Gross that he had "gone over" the charges and the elements of the offenses with his lawyer, and an express statement by Gross's lawyer that the lawyer "went over the elements with [*Gross* ]." *Gross,* 186 Md.App. at 325, 330, 973 A.2d at 898, 900.

of the charge to which he has pled guilty has not entered his plea knowingly and voluntarily." The State relies on *Priet,* however, for the proposition that Rule 4–242(c) "does not impose any ritualistic or fixed procedure to guide the trial judge in determining whether a guilty plea is voluntarily and intelligently entered," and that the Rule "simply contemplates that the court will explain to the accused, in understandable terms, the nature of the offense to afford him a basic understanding of its essential substance, rather than of the specific legal components of the offense to which the plea is tendered." According to the State, in *Priet* (quoting *Henderson* ) the Court *held* that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Further, as the argument goes, *Bradshaw* did not change the landscape, as *"Bradshaw* did not hold that in order to satisfy the requirements of due process . . . a guilty plea court must ascertain on the record the source of the defendant's knowledge with respect to the nature or elements of the charges to which the defendant is pleading guilty." Finally, the State contends that such a conclusion— *i.e.* that courts may presume that counsel explain routinely the nature of the elements of the crimes of which his or her client is charged—is in accord with numerous other jurisdictions considering the matter post-*Bradshaw.*

In response, Daughtry argues generally that "[t]he record in this case does not reflect that [he] knew that he was pleading guilty to 'first degree' murder, or that he knew the elements of that offense," considering that "[t]here is no explanation on the record of premeditated murder or felony murder, and no distinction is made between first and second degree murder." Further, Daughtry maintains that the presumption language was dicta as applied in *Henderson* and the consolidated cases in *Priet.* Any uncertainty as to the viability of the *Henderson/Priet* presumption, Daughtry contends, was clarified in *Bradshaw,* in which "the . . . Supreme Court used language which understandably caused the Maryland Court of Special Appeals to question the viability of the

language from *Henderson*," as "[t]he [presumption] language used in *Henderson* . . . was glaringly absent from the Court's opinion in *Bradshaw.*" Thoughtfully, Daughtry lays out various paths for the Court to take in deciding his case:

> [T]his Court could hold that the record of a guilty plea must include one of three things: advice of the elements of the crime on the record; an acknowledgment by defense counsel that he advised his client of the elements of the offense; or, an acknowledgment by the defendant that his attorney advised him of the elements of the offense. . . .
>
> This Court could also hold that circuit courts do not need to do any one of these three things; that the totality of the circumstances will still control, as it did in *Priet, supra,* but that there will be no presumption that an attorney has advised his client of the elements of the offense to which he pleads guilty based solely on the fact of representation. The record would have to contain facts from which an inference could be drawn that the defendant had been advised of the elements and the nature of the crime to support a conclusion that the defendant has knowledge."

To begin, we agree with Daughtry that "[s]hort of this Court adopting the State's argument that it may be presumed from the fact of [legal] representation [ ] Daughtry was informed of the nature and elements of first degree murder, [his] conviction and sentence based upon his guilty plea . . . must be vacated." Accordingly, we must confront the viability of the notion of the *Henderson/Priet* presumption, post-*Bradshaw.*

We are convinced that the Supreme Court's decision in *Bradshaw* did not affect the limited viability of the presumption as set forth originally in dicta in *Henderson.* To be sure, the *Bradshaw* opinion does not acknowledge any presumption that counsel, in most cases, explains the nature of the charges to his or her client. This, however, is unremarkable, as the Court did not need to employ the presumption, considering that "[i]n Stumpf's plea hearing, his attorneys represented on the record that they had explained to their client the elements

of the aggravated murder charge. . . ." *Bradshaw*, 545 U.S. at 183, 125 S.Ct. at 2405, 162 L.Ed.2d at 153; *see Miller v. State*, 185 Md.App. at 304–05, 970 A.2d at 339 ("The Court said nothing about the presumption language it had used in *Henderson* (or in *Lonberger*). That is not surprising, however, because the facts in *Bradshaw* supported a 'knowledge of nature and elements of the crime' finding without applying any such presumption."). Thus, to the extent that a presumption was identified in *Henderson*, it remains unaffected by *Bradshaw*. *See Castellon–Gutierrez*, 754 F.Supp.2d at 780 ("*Bradshaw* does not address *Henderson*'s holding, and other federal courts have applied the presumption without questioning its post-*Bradshaw* validity."); *Phillips v. Spencer*, 477 F.Supp.2d 306, 311 (D.Mass.2007) ("The decision in *Bradshaw* . . . underscored the Supreme Court's earlier decision in *Henderson* . . . .").

That the limited viability of the *Henderson/Priet* presumption remains intact after *Bradshaw*, however, does not carry the day for the State. Our jurisprudence, in determining the validity of a guilty plea, has focused always on whether the defendant, *based on the totality of the circumstances*, entered the plea knowingly and voluntarily. *See, e.g., Metheny v. State*, 359 Md. 576, 604 n. 18, 755 A.2d 1088, 1104 n. 18 (2000); *State v. Brazle*, 296 Md. 375, 383, 463 A.2d 798, 802 (1983); *Priet*, 289 Md. at 276, 424 A.2d at 354; *Countess v. State*, 286 Md. 444, 473, 408 A.2d 1302, 1317 (1979); *Davis v. State*, 278 Md. 103, 109, 361 A.2d 113, 116 (1976); *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 757 (1970). Employing the *Henderson/Priet* presumption in cases in which the only evidence proffered to show that a defendant is aware of the nature of the charges against him is the fact that he or she is represented by an attorney and that the defendant discussed the plea with his or her attorney undermines the purpose of a "totality of the circumstances test." Utilizing the presumption on an otherwise bare record obviates the need to look any further than the mere fact of representation itself.

We do not disagree necessarily with the notion—quoted in only one case post-*Priet, Lovell,* 347 Md. at 635, 702 A.2d at 267—that "it *may* be appropriate to presume that *in most cases* defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Priet,* 289 Md. at 290, 424 A.2d at 361 (quoting *Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258, 49 L.Ed.2d at 116) (emphasis added). Accordingly, regardless of whether the presumption language as employed by either or both *Henderson* and *Priet* is construed as a holding or as dicta, the quoted language is replete with sufficient precatory language such that we need not apply it in every case.

The record in the present case reflects that the only portion of the plea colloquy relating to ascertaining whether the plea was knowing and voluntary was Daughtry's affirmative response to the trial judge's question, "Have you talked over your plea with your lawyer?" Thus, the record in this case is more anemic than any of the aforementioned cases—*Gross* (defendant answering in the affirmative to the trial court's asking if he "[h]a[d] gone over the charges with your attorney ... and the elements of the offenses that [he was] charged with"); *Abrams* (the trial court's recitation of "uttering" included all of the elements of the crime); *Bradshaw* (defendant's "attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge"); *Priet* (defendant "acknowledged that he had discussed his plea, the facts of the case and possible defenses to the charge with his attorney"); *Pincus* (defendant "said he knew the difference between first and second degree murder"); and *Vandiver* (defendant "acknowledged during his testimony that he had discussed the elements of robbery with his counsel and understood what he had been told"). Rather, the present case is more like *Miller,* where the Court of Special Appeals held that defendant's plea was not entered voluntarily and knowingly, considering that, in both cases, the attorneys

did not explain the nature and elements of [the charges], defense counsel did not represent that he had explained the

nature and elements of the crime to [the defendants], and [the defendants] did not represent that [they] understood the charge. Neither defense counsel nor the prosecutor explained the nature and elements of [the charges].

*Miller,* 185 Md.App. at 307, 970 A.2d at 340.

▉ At bottom, we are guided in deciding Daughtry's case by Rule 4–242(c), which requires "an examination of the defendant on the record in open court." Relying on a mere presumption—and nothing more—to conclude that a defendant "is pleading voluntarily, with understanding of the nature of the charge," would encourage trial courts to circumvent or give short-shrift to the Rule's requirement that a defendant be examined "on the record in open court." *See Hicks v. Franklin,* 546 F.3d 1279, 1284 (10th Cir.2008) ("We will not apply the presumption that the attorney explained the element to the defendant ... unless there is some factual basis in the record to support it."). Therefore, we hold that, regarding the issue of the defendant being made aware of the nature of the charges against him, where the record reflects nothing more than the fact that a defendant is represented by counsel (as in the present case) and that the defendant discussed generically the plea with his or her attorney, such a plea colloquy is deficient under Rule 4–242(c), and the plea must be vacated. We reiterate that the test, as stated in *Priet,*[17] in determining whether a guilty plea is voluntary under current Rule 4–242(c), is whether the totality of the circumstances reflects that a defendant knowingly and voluntarily entered into the plea.[18]

---

**17.** At oral argument before this Court, there was some discussion of whether we must overrule *Priet* in order to find for Respondent. We emphasize here that, not only are we not overruling *Priet,* but that we are reaffirming the holding of that case—namely, that the totality of the circumstances controls.

**18.** Notwithstanding the discussion of what will pass muster under Rule 4–242(c) in the absence of express advisements to a defendant of the nature and elements of charges against him, "[t]he better practice is for the judge to inform the defendant of the nature and elements of the

■ Instead of merely informing practitioners and judges what conduct merely will *not* pass muster under Rule 4–242(c) (*i.e.* the mere fact of representation alone and that the defendant discussed the plea with his or her attorney), we shall elaborate somewhat on what factors can and should aid a trial court in determining whether to accept a guilty plea. *Priet* provided a starting point, when we stated that "the required determination can only be made on a case-by-case basis, taking into account ... among other factors, *the complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the court's acceptance of the plea.*" *Priet,* 289 Md. at 277, 424 A.2d at 354 (emphasis added).

■ Regarding the "complexity of the charge," *Priet* explained that "[t]he nature of some crimes is readily understandable from the crime itself." [19] *Id.;* see *State v. Crowe,* 168 S.W.3d 731, 750 (Tenn.2005) ("[I]n some cases ... the offense or the relevant element of the offense is a self-explanatory legal term, [and is] so simple in meaning that a lay person can be expected to understand it."). We do not attempt to undertake here an enumeration of what crimes fall under this category, but we think it clear that the nature of

---

offense to which the plea is offered...." WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 21.4(c) (3d ed.2007).

**19.** Professor LaFave explains:

> Courts have also taken into account whether or not the charge is a self-explanatory legal term or so simple in meaning that it can be expected or assumed that a lay person understands it. On this basis it has been held, for example, that the elements of a conspiracy charge should be explained by the judge to the defendant. By contrast such offenses as escape and altering a check have been deemed sufficiently straightforward that an element-by-element parsing is unnecessary.

WAYNE R. LAFAVE ET AL., *supra* § 21.4(c). We cite Professor LaFave, not for the proposition that a trial judge must explain every element of the above-cited crimes to a defendant—we have established *infra* that no specific litany is required—but rather as support for the proposition that a mere mention of certain crimes on the record may suffice under Rule 4–242(c)'s mandate that there be "an examination of the defendant on the record in open court."

"first-degree murder" is not readily understandable from the label of the crime itself.[20, 21] *See* 1 DAVID E. AARONSON, MARY-LAND CRIMINAL JURY INSTRUCTIONS AND COMMENTARY § 5.51(A) (3d ed. 2009) ("In order to convict the defendant of murder in the first degree, the State must prove beyond a reasonable doubt that: (1) [the defendant's] conduct caused the death of [the victim and] (2) the killing was willful, deliberate and premeditated; [ (3) there were no mitigating circumstances;] [and, (4) the killing was not justified."]; *Willey*, 328 Md. at 138, 613 A.2d at 961 (noting the "fine and often difficult distinction between first degree murder and ... second degree murder")); *Pinkney v. State*, 151 Md.App. 311, 356, 827 A.2d 124, 151 (2003), *cert. denied*, 377 Md. 276, 833 A.2d 32 (2003) ("[T]he distinction between second degree and first degree premeditated murder often confounds juries."). *But see Lovell*, 347 Md. at 635, 702 A.2d at 266–67 (quoting *Priet*, 289 Md. at 288, 424 A.2d at 360) ("The first-degree murder to which Lovell pled is one of those crimes, 'the nature of [which] is readily understandable from the crime itself.' "). Next, "the personal characteristics of the accused" are important, as one with a diminished mental capacity is less likely to be able to understand the nature of the charges against him than one with normal mental faculties. *See Henderson*, 426 U.S. at 641, 96 S.Ct. at 2256, 49 L.Ed.2d at 112 (noting that the defendant

---

**20.** In the present case, Daughtry also pleaded guilty to violating Maryland Code (2002), Criminal Law Article, § 4–204, which provides that "[a] a person may not use ... any handgun in the commission of a crime of violence ... or any felony...." Although the phrase "use of a handgun in the commission of a crime of violence" appears readily understandable from the charge itself, *see* Md.Code (2003), Public Safety Art., § 5–101(c), where one is charged specifically with the "use of a handgun in the commission of a felony," such a charge is not readily understandable from the charge itself, as we think the average citizen does not know what crimes are considered felonies versus misdemeanors.

**21.** In any event, during the plea colloquy here, the phrase "first-degree murder" was not used. In fact, the only mention of the murder charge was in Daughtry's defense counsel's remarks, in which counsel stated that Daughtry would be "entering a plea of guilty to Count 1 of the indictment which charges him with murder...."

was, in his youth, committed to the "State School for Mental Defectives where he was classified as 'retarded' "); *Edwards v. United States*, 766 A.2d 981, 991 (D.C.2001) ("[W]here it is alleged that an individual is mentally retarded, the trial court must consider that factor when determining whether an individual has the mental capacity to achieve the necessary understanding of a guilty plea.") (internal quotation marks omitted). Finally, it is possible that the "factual basis proffered to support the court's acceptance of the plea" may describe the offenses charged in sufficient detail to pass muster under the Rule.[22] *See Crowe*, 168 S.W.3d at 750 ("Another source from which a defendant may gain an understanding of the nature of the offense is the prosecution's summation at the plea submission hearing of the facts relevant to the elements of the plea offense.").

■ Although Rule 4–242(c) and the caselaw require on-the-record, in open court, evidence from the plea colloquy that the defendant is aware of the nature of the charges against him, the source or speaker from which such evidence emanates is immaterial. Thus, it is of no matter whether (1) *the defendant* informs the trial court that either he understands personally or was made aware by, or discussed with, his attorney the nature of the changes against him (as in *Pincus, Vandiver*, and *Gross*; see also *State v. Reid*, 277 Conn. 764, 894 A.2d 963, 976 (2006)); (2) *the attorney* informs the trial court that he informed his client of the charges against the client (as in *Bradshaw*); or (3) the *trial court itself* informs

---

**22.** In the present case, although the prosecutor recited an agreed statement of facts—to which Daughtry responded in the affirmative to the trial court's inquiry of whether such facts were "what happened in the case"—such facts (or an admission of the accuracy of those facts) in no way informed Daughtry of the requisite elements or the nature of first-degree murder or use of a handgun in the commission of a crime of violence or felony. *See, e.g., United States v. Syal*, 963 F.2d 900, 905 (6th Cir.1992) (rejecting the government's claim that the trial court's failure to state the elements of the pertinent charge was cured by the prosecutor asking the defendant directly whether he did certain things, explaining that admission to certain facts does not suffice where "there was no explanation of the legal significance of those facts").

the defendant of the charges against the defendant (as in *Abrams* ). *See* WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 21.4(c) (3d ed. 2007) ("It is not surprising ... that lower courts have often denied relief upon a showing that defense counsel had explained the elements of the offense charged to the defendant...."). The presence of any one of these scenarios on the record is strong evidence, absent other circumstances tending to negate a finding of voluntariness (*e.g.*, mental incapacity, lack of grasp of English language, etc.), that the defendant entered the guilty plea knowingly and voluntarily.

 In the present case, none of these indicia are present. It may be that, in answering in the affirmative to the trial court's question, "Have you talked over your plea with your lawyer?," the defendant understood merely the terms of the plea, but not the nature of the charges to which he plead guilty. *See Miller*, 185 Md.App. at 309, 970 A.2d at 341 ("An accused can understand the terms of a plea agreement without knowing the nature and elements of the charge to which the plea applies."). Because employing the *Henderson/Priet* presumption on an otherwise naked record would be contrary to Rule 4–242's requirement that there be an examination "on the record in open court," we hold that, based on the totality of the circumstances, Daughtry's plea was not entered knowingly and voluntarily, and it must be vacated.[23] *See* WAYNE R.

---

**23.** The Dissenting Opinion, 419 Md. 35, 81–82, 18 A.3d 60, 87–88 (2011), argues that, because Daughtry "gave a detailed confession to the investigating officers, in which he confessed to his role in the armed robbery that resulted in the murder of the robbery victim," there is support for the conclusion that Daughtry's plea was entered knowingly and voluntarily. We agree that it is feasible that a defendant's confession to law enforcement of his or her involvement in a crime may inform a finding that a guilty plea is entered knowingly and voluntarily. In this case, however, the confession—the sum and substance of which is only made aware to us though the agreed statement of facts and the prosecution's "Memorandum in Aid of Sentencing"—like the agreed statement of facts, *see supra* note 22, in no way informed Daughtry of the requisite elements or the nature of first-degree murder or use of a handgun in the commission of a crime of violence or felony.

LaFave, *supra* § 21.4(c) (calling a court's reliance on the "presumption in order to defeat a defendant's *Henderson* claim" "a highly questionable result").

 We are not sounding the death knell for the *Henderson/Priet* presumption.[24] We hold today merely that when the only hook upon which the State hangs its hat in arguing that a defendant enters a plea of guilty knowingly and voluntarily is that the defendant is represented by counsel and that the defendant discussed the plea with his or her attorney, such a plea colloquy is deficient and the guilty plea must be vacated. Because Rule 4-242(c) requires an "on the record" examination before accepting a plea as voluntary, we agree with the Tenth Circuit Court of Appeals in that "[w]e will not apply the presumption that the attorney explained the element to the defendant . . . unless there is some factual basis in the record to support [the presumption]." *Hicks*, 546 F.3d at 1284.[25]

---

**24.** We do not deny that there are a significant number of cases, post-*Bradshaw*, that cite the *Henderson* presumption. We, however, like the Court of Special Appeals in *Miller*, are unaware of "any decision rendered after *Bradshaw* approving a guilty plea when the defendant's knowledge of the nature and elements of the crime was presumed from the fact of representation without more." *Miller*, 185 Md.App. at 310, 970 A.2d at 342; *see* cases cited in Petitioner's brief, *e.g.*, *Desrosier v. Bissonnette*, 502 F.3d 38, 40 (1st Cir.2007); *State v. Reid*, 277 Conn. 764, 894 A.2d 963, 967 (2006); *Tomlin v. State*, 295 Ga.App. 369, 671 S.E.2d 865, 868 (2008).

**25.** In further support of its contention that Daughtry entered his guilty plea knowingly and voluntarily, the State cites to the transcript of the sentencing hearing—which took place some sixteen months after the plea hearing—during which Daughtry's counsel stated that Daughtry "understands what he's been charged with." We need not revisit the issue of whether events taking place subsequent to a plea hearing may aid in our determination of what was understood at the time of the plea hearing, *see Cuffley v. State*, 416 Md. 568, 7 A.3d 557 (2010); *Baines v. State*, 416 Md. 604, 7 A.3d 578 (2010), as defense counsel's statement that Daughtry "understands what he's been charged with" at a sentencing hearing sixteen months after the plea hearing in no way informs the question of what Daughtry understood at the plea hearing itself. We note, however, that in *Gross, supra,* although the court observed that, at a Coram Nobis hearing taking place more than seven years after the plea hearing, his defense attorney from the plea hearing testified that he

## IV. *Retrospective Versus Prospective Application*

As explained in *American Trucking Ass'ns, Inc. v. Goldstein*, 312 Md. 583, 591, 541 A.2d 955, 958–59 (1988), "[i]n the overwhelming majority of cases, a judicial decision sets forth and applies the rule of law that existed both before and after the date of the decision.... [I]n the ordinary case, no issue of a 'prospective only'[26] application arises." *See James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481, 488 (1991) (stating that retroactivity "is overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law") (internal citations omitted). Where, however,

a decision of this Court with regard to a constitutional provision, a statute, or a common law principle,[27] is overruled on the ground that the decision represented an erro-

---

went over the elements of possession with the intent to distribute, the Court of Special Appeals nevertheless framed the issue before it as "whether a representation to the plea judge *by the defendant* [as opposed to defense counsel] had discussed with him the elements of the charges he faces will suffice to show that the defendant's plea was voluntarily and knowingly entered." *Gross*, 186 Md.App. at 341, 973 A.2d at 907. Thus, at least to the Court of Special Appeals, what happened at some point subsequent to the plea hearing was not a proper factor in determining what Abrams knew or understood at the plea hearing.

**26.** Even when applying a holding prospectively only, "that change will still apply to the case where the new rule was first decided," considering that "if the litigant who successfully contests a standing rule of law is denied relief because the new rule applies purely prospectively, there would be little motivation to attack settled rules of law." *Polakoff v. Turner*, 385 Md. 467, 485, 869 A.2d 837, 848 (2005) (quoting *Stover v. Stover*, 60 Md.App. 470, 476, 483 A.2d 783, 786 (1984)). Further, prospective application of a holding applies also to "all other pending cases where the relevant question has been preserved for appellate review." *Am. Trucking Ass'ns, Inc. v. Goldstein*, 312 Md. 583, 592, 541 A.2d 955, 959 (1988).

**27.** These situations are "[t]o be distinguished from ... those in which this Court ... issues a ruling that changes the common law of Maryland. Ordinarily, such decisions are fully prospective." *Goldstein*, 312 Md. at 592 n. 7, 541 A.2d at 959 n. 7; *see also Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 470, 601 A.2d 633, 657–58 (1992).

neous interpretation or application of the constitutional provision, statute, or common law principle, the question of whether the new ruling should be applied prospectively only is governed by the principles set forth in *Owens–Illinois[, Inc.] v. Zenobia,* 325 Md. 420, 470–72, 601 A.2d 633, 658 (1992).... [28]

*Walker v. State,* 343 Md. 629, 637, 684 A.2d 429, 432–33 (1996).[29] Accordingly, both the State and Daughtry, anticipating a shift in the law, rely on *Zenobia* in their respective briefs; however:

[T]he question of whether a particular judicial decision should be applied prospectively or retroactively, depends in the first instance on whether or not the decision overrules prior law and declares a new principle of law. If a decision does not ... no question of a "prospective only" application arises; the decision applies retroactively in the same manner as most court decisions.

*Houghton v. County Comm'rs of Kent County,* 307 Md. 216, 220, 513 A.2d 291, 293 (1986); *see Jones v. State,* 297 Md. 7, 24–25, 464 A.2d 977, 985 (1983) ("There was no overruling of a prior decision or overruling of an interpretation by this Court ....[, t]herefore, the issue of retroactivity is not presented.").

In the present case, the State contends:

Any holding by this Court that the record of a guilty plea proceeding must contain affirmative evidence that the defendant has been made aware of the nature of the charges to which he is pleading guilty, would represent a significant departure from its prior holding in *Priet* wherein this Court held that a court, accepting a guilty plea, need not engage

---

**28.** As explained in *Zenobia,* 325 Md. at 471, 601 A.2d at 658, "two major considerations in determining whether a new holding is to be applied only prospectively are [(1)] the purpose of the holding and [(2)] the extent of reliance upon the overruled cases."

**29.** But "where a decision has applied settled precedent to *new and different factual situations,* the decision always applies retroactively." *Potts v. State,* 300 Md. 567, 577, 479 A.2d 1335, 1341 (1984) (emphasis added).

the defendant in any particular fixed litany in order to ascertain whether the defendant's plea was knowing and voluntary. Thus, if this Court, contrary to other courts considering pleas post-*Bradshaw*, should hold that *Bradshaw* represents a retreat by the Supreme Court from reliance upon the *Henderson* presumption to satisfy the requirement that the defendant's plea is knowing, it should also hold that pleas entered prior to its decision in this case are to be reviewed under the standard announced in *Priet*, with full reliance upon *Henderson*.[30]

In response, Daughtry argues that, because "[t]he Court of Special Appeals based its *Abrams*, *Miller* and *Gross* opinions on its understanding of what the Supreme Court said in *Bradshaw*":

If this Court concludes that "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel[,]" or that "[w]here a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty[,]" but that a presumption of advice will not suffice, then the Court's ruling in this case should apply to any Maryland case in which the plea was entered after the *Bradshaw v. Stumpf* case which was decided on June 13, 2005.

Our decision in the present case in no way "over-rules prior law and declares a new principle of law." The law of this State with respect to the voluntariness of guilty pleas has been the same over the past thirty years since we decided *Priet* (if not longer): "[W]hether, considering the record as a

---

**30.** In so arguing, the State is asking for "modified or selective prospectivity," in which "a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." *Polakoff*, 385 Md. at 486, 869 A.2d at 849 (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 537, 111 S.Ct. 2439, 2444, 115 L.Ed.2d 481, 489 (1991)).

whole, the trial judge could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty." [31] *Priet,* 289 Md. at 291, 424 A.2d at 361; *see Metheny,* 359 Md. at 604 n. 18, 755 A.2d at 1104 n. 18; *Lovell,* 347 Md. at 635, 702 A.2d at 267; *State v. Brazle,* 296 Md. at 383, 463 A.2d at 802; *Countess v. State,* 286 Md. at 473, 408 A.2d at 1317; *Davis v. State,* 278 Md. at 109, 361 A.2d at 116; *State v. Gutierrez,* 153 Md.App. 462, 477, 837 A.2d 238, 247 (2003), *cert denied,* 380 Md. 618, 846 A.2d 402 (2004); *Barnes v. State,* 70 Md.App. 694, 707, 523 A.2d 635, 641 (1987); *Brady v. United States,* 397 U.S. at 749, 90 S.Ct. at 1469, 25 L.Ed.2d at 757. Today, we reaffirm this "totality of the circumstances" approach to determining the voluntariness of guilty pleas.

■ It may well be that members of the bar and lower courts—in cases that did not reach this Court—relied upon and employed the *Henderson/Priet* presumption in accepting or upholding guilty pleas in cases in which there was no other evidence (aside from the fact of representation) tending to show that the plea was knowingly and voluntarily entered. Yet, "that 'some trial courts and members of the bar seemingly have [mis]construed' a prior case does not mean that a later decision, setting forth a proper interpretation, 'comprise[s] a departure from the law applicable to criminal causes in Maryland.' " *Walker,* 343 Md. at 640, 684 A.2d at 434 (quoting *Davis v. State,* 285 Md. 19, 27, 400 A.2d 406, 409, 410 (1979)). Because our decision today is consistent entirely with Rule 4–242(c), its predecessor, and attendant caselaw, we need not

---

**31.** Because our emphasis as an appellate court must be on what "the trial judge could fairly determine" at a defendant's guilty-plea hearing in determining whether a defendant understood the nature of the charge to which he pleaded guilty, *Priet,* 289 Md. at 291, 424 A.2d at 361, we may look only to "the record as a whole" that was before the trial judge during that proceeding. Accordingly, the Dissenting Opinion's reliance on statements made by the prosecutor, Daughtry's counsel, or Daughtry himself, leading up to or at Daughtry's sentencing hearing (some sixteen months after the plea hearing) is misplaced. *See* 419 Md. 35, 82–86, 18 A.3d 60, 88–90 (2011); *see also Cuffley,* 416 Md. at 582, 7 A.3d at 565; *Baines v. State,* 416 Md. 604, 615, 7 A.3d 578, 585 (2010); *supra* note 25.

address the parties' contentions vis á vis *Zenobia*, and we declare that this opinion must be given full retrospective effect.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE GUILTY PLEAS ENTERED IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS NOT IN- CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

BATTAGLIA, MURPHY, and ADKINS, JJ., Dissent.

MURPHY, J., dissenting, in which BATTAGLIA and ADKINS, JJ., join.

I agree with the majority's reaffirmation of the " 'totality of the circumstances' approach to determining the voluntariness of guilty pleas." I also agree with the majority that, when a defendant who has entered a guilty plea claims that the judge who accepted that plea failed to comply with the requirements of Md. Rule 4–242, the court reviewing this claim must deter- mine "whether, **considering the record as a whole,** the trial judge could fairly determine that[, at the proceeding during which the plea at issue was entered,] the defendant under- stood **the nature of the charge** to which he [or she] pleaded guilty." (Emphasis supplied). In my opinion, however, "the record as a whole" includes everything shown to have oc- curred (1) before, (2) during, and (3) after the defendant pleaded guilty. While the dispositive issue is whether the defendant understood the nature of the charge at the moment the guilty plea was entered, the reviewing court should resolve that issue by examining everything in the record that has probative value.

In the case at bar, the record clearly shows that the Respondent (1) gave a detailed confession to the investigating officers, in which he confessed to his role in the armed robbery that resulted in the murder of the robbery victim, (2)

aided in the investigation of that crime, which resulted in the arrest of his co-defendant, (3) entered into a plea agreement in which he promised to testify against his co-defendant, and during which he answered "Yes" when asked by the Court whether the facts stated by the prosecutor were "what happened in this case?," (4) breached his plea agreement when called to testify during the trial of his codefendant, and (5) at sentencing, requested "mercy" on the ground that, "but for" his cooperation, the State's case against his co-defendant would not have been likely to "come to trial." I therefore dissent from the holding that the Respondent's plea of guilty did not pass the *Priet* test.

The transcript of the Respondent's guilty plea proceeding includes the following statements:

THE COURT: What's the State's recommendation on the Court's acceptance of such a plea?

[THE PROSECUTOR]: The State's recommendation as to Count I would be life suspend all but 30 years. As to Count 2, would be, I guess, 20 years concurrent, the first five without parole.

[RESPONDENT'S COUNSEL]: That's acceptable.

[THE PROSECUTOR]: For a total of life suspend all but 30 years.

\* \* \*

[RESPONDENT'S COUNSEL]: Not free to allocute. Life suspend all but 30.

\* \* \*

THE COURT: All right. The Court is willing to bind itself to that recommendation.

[RESPONDENT'S COUNSEL]: Of course, Your Honor, in exchange for that, the Defendant would be cooperating with the State and would be testifying in any and all proceedings against Mr. Ashton.

THE COURT: Okay. Is a condition of his plea that he testify truthfully?

[THE PROSECUTOR]: Yes.

[RESPONDENT'S COUNSEL]: Yes.

\* \* \*

[THE COURT] All right. I want you to have a seat. The Prosecutor is about to describe to me the facts that they're relying upon to support your plea.

[PROSECUTOR] If this matter had gone to trial, the State would have produced witnesses who would testify that on December 14, 2005, at approximately 12:49 p.m., uniformed officers from the Prince George's County Police Department were dispatched to 1132 Kennebec Street, Apartment 204, Oxon Hill, Prince George's County, Maryland for the report of a shooting.

While responding to that location, officers saw a vehicle leaving the scene at a high rate of speed and in that vehicle were occupants who matched a lookout given by a witness to 911. The officers followed the vehicle—it was a Mercury Grand Marquis—into the District of Columbia to Yuma Street, Southeast. Two occupants got out and fled the scene. This Defendant, Demetrius Daughtry, was apprehended by officers and transported to the Metropolitan Police Department Violent Crime Branch where he gave a statement regarding his involvement in this matter.

Furthermore, if there was further testimony by Mr. Daughtry, he would testify that he had met up with Adrian Ashton earlier that morning, that the two of them decided to go to 1132 Kennebec Street, Apartment 204 to see Anthony Brown and to rob him of some marijuana. That both Mr. Daughtry and Adrian Ashton had handguns. They both went to that location. That both Adrian Ashton and Demetrius Daughtry went inside of that location. That there was a struggle between Adrian Ashton and Anthony Brown at time Mr. Daughtry fired in the direction of Anthony Brown and then grabbed some marijuana and fled out of the apartment.

Mr. Brown, when he was located at the scene by other officers, was pronounced dead at the scene. An autopsy was performed at which time the results of the autopsy

were that the cause of death was multiple gunshot wounds and the manner of death was a homicide.

Further, the Prince George's County police technician who was there—, well the doctor recovered two bullets which she gave to the technician. The technician marked those bullets as RM–12 and RM–13, the first being a .45 caliber bullet, the second being a .40 caliber bullet.

There would be further testimony that between Mr. Daughtry, the Defendant here, and Adrian Ashton, there was a .40 and a .45 caliber handgun. Court's indulgence. All events occurring in Prince George's County.

[THE COURT]: Mr. Daughtry, did you hear what the Prosecutor just described to me?

[THE DEFENDANT]: Yes.

[THE COURT]: Is that what happened in this case?

[THE DEFENDANT]: Yes.

In my opinion, the nature of the charges to which the Respondent pleaded guilty are "readily understandable" to any defendant who has (1) confessed to a classic "felony murder," (2) aided in the arrest of his co-defendant, (3) agreed to enter a guilty plea pursuant to a plea agreement that calls for him to testify as a State's witness, and (4) during his guilty plea proceeding, expressed agreement with the Statement of Facts that describe his role in the death of the robbery victim.[1] Under these circumstances, even if subsequent events were inadmissible as a matter of law on the issue of whether the Respondent understood the nature of the charges when he entered his pleas of guilty, "the record as a whole" at that point in time clearly shows that he did.

The record also shows that (1) when called as a State's witness in the trial of his codefendant, the Respondent asserted his Fifth Amendment privilege, and (2) as a result of the Respondent's breach of the plea agreement, the State filed a

---

1. The offenses to which the Respondent pleaded guilty are simply not "complex," and they do not involve the "fine and often difficult distinction" between degrees of homicide.

MEMORANDUM IN AID OF SENTENCING that included the following assertions:

On September 7, 2006, the defendant withdrew his previously entered plea of not guilty and plead guilty to count–1, murder 1st degree and count–4, use of a handgun in the commission of a felony, before the Honorable Dwight D Jackson. As part of the plea agreement the defendant agreed to testify truthfully against his co-defendant, Adrian Ashton.

On May 3, 2007, Daughtry was called as a witness in the trial of *State of Maryland v. Adrian Ashton* and refused to testify.

*　　*　　*

### Defendant's Version of The Events

Upon his arrest in the District of Columbia, the defendant gave a videotaped statement to the police admitting his involvement in the murder of Anthony Brown. He later had further conversations with law enforcement personnel. In sum and substance he stated that on December 14, 2005, at approximately 12:29 pm, he and Adrian Ashton went to Anthony Brown's apartment at 1132 Kenebec Street, Apt 204, Oxon Hill, Prince George's County, Maryland, to rob Brown of some marihuana. Daughtry and Ashton drove to Brown's apartment. Daughtry was in the driver's seat and Ashton was in the front passenger seat. Both Daughtry and Ashton had handguns. Ashton had a .40 caliber handgun and Daughtry had a .45 caliber handgun. Ashton went into the apartment first. Daughtry entered into the apartment after he heard gunshots. Daughtry saw Ashton and Brown struggling on the couch. Daughtry fired once or twice in the direction of the victim. Daughtry then grabbed a bag of marihuana, ran out of the apartment and back to his car. Ashton followed him out of the apartment, but returned to the apartment to retrieve his handgun magazine. Ashton took Daughtry's handgun with him when he returned to Brown's apartment. Ashton returned to the car

and both men fled the scene. Daughtry was apprehended in DC shortly after fleeing Brown's apartment.

In his interview with parole and probation, the defendant again admitted his involvement and apologized to the victim's family and to the State of Maryland, but denied having a gun at the time of the offense.

\* \* \*

While this may be the defendant's first serious criminal conviction, it is not the first time the defendant has been involved in assaultive behavior. The defendant was found guilty of second degree assault in 2003. The safety of society requires that he be sentenced to a significant period of incarceration. Furthermore, pursuant to the defendant's agreement with the State, the defendant agreed to testify truthfully against his codefendant. At the co-defendant's trial, the defendant refused to testify. Therefore, the State asserts that it is not bound by any prior agreement as to sentence recommendation.

For all the reasons stated above, the State respectfully requests that this Court sentence the defendant to life plus 20 years.

The transcript of the Respondent's sentencing proceeding includes the following statements:

[RESPONDENT'S COUNSEL]: Mr. Daughtry has accepted his responsibility in Mr. Brown's death. As you do know, he aided the investigation in this matter. He understands what he's been charged with. He understands what he's admitted to.... He did not want to go to trial. He wanted to save the victim's family from any further pain. He wanted to save the State the cost of prosecution of him. And thus, he's placing his future upon the mercy of the Court.

\* \* \*

[THE PROSECUTOR]: ... As Your Honor is aware in this case, Mr. Daughtry entered into an agreement. Part of the terms of the agreement was that he was to testify truthfully in any grand juries and any trial and other court proceeding

with respect to the matters about which this may require his testimony, specifically, as to the trial of *State v. Adrian Ashton.*

At the trial of *State v. Adrian Ashton,* Mr. Daughtry was called as a witness.

THE COURT: I remember. He took the Fifth.

[THE PROSECUTOR]: Yes. So with that understanding, the State would submit that, basically, there is a violation of the agreement and[ ] therefore, the state is free to ask for what it feels would be the appropriate sentence.

\* \* \*

[RESPONDENT'S COUNSEL]: ... Madam State's Attorney is seeking to ask the Court to punish Mr. Daughtry for violating the terms of the agreement. Mr. Daughtry is not asking the Court to honor the terms of the agreement. We understand. He understands that the agreement is null and void at this juncture.

\* \* \*

He knows that once an agreement is breached, there is no agreement any more. He understands that, but he is asking the Court to take into account the fact that he did aid in the investigation. But for Mr. Daughtry, it's not likely that Mr. Ashton would have come to trial.

Your Honor, again, he's going to be asking for life suspend all but 40 and a concurrent 20 on the handgun.

\* \* \*

Mr. Daughtry wants the Court to know that he made—as he says, he made a stupid mistake. He wasn't thinking in his right mind, so he has to accept his consequences, accept it and keep moving on. He wants to apologize to the victim's family and to the State of Maryland for being involved in a senseless act of malice.

\* \* \*

THE DEFENDANT: I'd just say that I truly, truly do apologize to Mr. Brown's family.

From my review of the record as a whole, I am persuaded beyond the shadow of a doubt that when the Respondent entered the guilty pleas at issue, he fully understood the nature of the charges to which he pleaded guilty. I would therefore reverse the judgment of the Court of Special Appeals and direct that Court to deny Petitioner's Application for Leave to Appeal.

Judges BATTAGLIA and ADKINS have authorized me to state that they join this dissenting opinion.